GEORGE MARTIN, Plaintiff-Appellant, *v.* FEDERAL LIFE INSURANCE COMPANY *et al.*, Defendants-Appellees.

First District (5th Division) No. 80—3207

Opinion filed September 24, 1982.—Rehearing denied October 22, 1982.

598

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, William J. Holloway, and Michael J. Leech, of counsel), for appellant.

Peterson, Ross, Schloerb & Seidel, of Chicago (J. Robert Geiman, Robert A. Seidel, and Kevin G. Burke, of counsel), for appellees.

JUSTICE WILSON delivered the opinion of the court:

Plaintiff, George Martin, filed an action for damages allegedly caused by his wrongful termination from employment with defendant Federal Life Insurance Company. His second amended complaint contains three counts sounding in estoppel and breach of contract, breach of implied covenant of good faith and fair dealing, and tortious inducement of breach of contract. The trial court granted defendants' motion to dismiss the second amended complaint and plaintiff appeals from the judgment. The allegations of plaintiff's action follow.

In February 1954, plaintiff began working for Federal Insurance as personnel manager. In the next 22 years he was promoted to director of personnel and purchasing, assistant vice president, assistant secretary, chairman of the personnel committee, and second vice president and senior officer.

Plaintiff's complaint further alleges that on or about July 1967, he received and intended to accept an attractive job offer with a competing insurance company. In response to that information, the president of Federal, now deceased, promised that if plaintiff refused the offer he would retain plaintiff until he retired from all business pursuits or no longer wished to be employed at Federal, so long as he continued to perform satisfactorily. Plaintiff, in reliance of this promise, refused the competitor's offer and entered into an oral agreement for permanent employment with Federal.

In January 1976, the board of directors named plaintiff to the post of vice president of the company. A year later he was reelected by the full board. One month later, the executive committee, allegedly at the

behest of defendant Joseph Austin, Federal's president, discharged plaintiff without cause. Plaintiff was not accused of any wrongdoing, poor performance or incompetence.

As a result of this discharge plaintiff states that he was denied the job security for which he had bargained when he entered into the agreement with Federal. Further, plaintiff alleges that Federal had other jobs to which he could have been assigned. The discharge was a stigma and impaired plaintiff's ability to find new opportunities. Defendant Austin's role in the firing, plaintiff alleges, was an attempt to "solidify his own personal control" over Federal's management and thereby assure his own job security "by eliminating experienced, capable managers who might detect errors in his decisions or bring such errors to the attention of the Board of Directors." The result was damage to employee morale, loss of the valuable services of plaintiff, and the inhibition to the free flow of information to Federal's board of directors. Plaintiff requests actual damages of $500,000 plus punitive damages for malicious conduct, and for interest and costs.

On November 20, 1980, the trial court granted defendants' motion to strike and dismiss the second amended complaint. The court's order stated that Illinois adopts the policy that "mere continuance as an employee is not sufficient consideration to support an alleged oral contract for permanent employment." The court also found that plaintiff's alternative theories failed to overcome the requirement of "separate, independent and substantial consideration." With respect to the allegations against defendant Austin individually, the court held that there could be no cause of action for tortious inducement of breach of contract since no contract existed between Federal and plaintiff. Finally, the court held that the allegations of Austin's interference with prospective economic advantage failed to state a cause of action. We reverse in part, affirm in part, and remand.

OPINION

COUNT I: BREACH OF CONTRACT AND ESTOPPEL

The primary issue before us is whether plaintiff's allegations of an oral agreement state a cause of action. Defendants view the employment agreement as a terminable at-will relationship that was legally terminated and maintain that the alleged agreement for "permanent" employment lacked sufficient consideration and mutuality of obligation. Alternatively, they contend that if a binding contract for permanent employment was formed, its enforcement is barred by the Statute of Frauds.

■ Before addressing the questions of consideration and mutuality it may be helpful to review the terminable at will doctrine, which has caused some confusion over the remedies available to a discharged employee. Generally, an employment agreement is formed when one party promises to render services in exchange for the other party's promise to pay wages. If the agreement does not specify a definite duration, it will last for as long as is mutually satisfactory, and either employer or employee may terminate the employment "at will," without liability for breach of contract. (*Criscione v. Sears, Roebuck & Co.* (1978), 66 Ill. App. 3d 664, 667, 384 N.E.2d 91.) Thus, it has been held that employees at will may be discharged for any reason, or none at all. (*Criscione v. Sears, Roebuck & Co.* (1978), 66 Ill. App. 3d 664, 670, 384 N.E.2d 91, 95.) In the usual case the employee is not entitled to prior notice or a hearing on the merits of his discharge. (*Kraftco Corp. v. Kolbus* (1971), 1 Ill. App. 3d 635, 274 N.E.2d 153, 156-57.) Several limitations to the terminable at will concept have arisen, however. For example, an employee at will who is terminated for exercising his statutory right to file a workmen's compensation claim against his employer has a right of action for damages (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353), as does an employee who is discharged for informing law enforcement officials of the criminal activity of a co-employee (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876). In these cases the employee's right to be free of a retaliatory discharge is grounded in public policy rather than from the employment relationship itself. See also *Manuel v. International Harvester Co.* (N.D. Ill. 1980), 502 F. Supp. 45, 51.

*The Requirement of Consideration*

■ In determining whether a contract is terminable at will, some courts have stated that an agreement of permanent employment is not binding unless it is supported by "specially bargained for consideration," that is, something *in addition* to plaintiff's performance of his employment duties. As authority for this rule, defendants rely on certain language in *Heuvelman v. Triplett Electrical Instrument Co.* (1959), 23 Ill. App. 2d 231, 161 N.E.2d 875.) In affirming a summary judgment for defendant employer, the appellate court stated:

> "Oral contracts for 'permanent employment' (meaning that as long as defendant was engaged in the prescribed work and as long as plaintiff was able to do his work satisfactorily, defendant would employ him) have been sustained, provided such contracts are supported by a consideration other than the obligation of services to be performed on the one hand and wages to be paid

on the other." (23 Ill. App. 2d 231, 235, 161 N.E.2d 875, 877.) In *Heuvelman*, the plaintiff alleged that he had stayed in defendant's employ despite an offer from a competitor firm because defendant had orally promised him permanent employment. Of this alleged offer, the court remarked that it was "presented in such a vague, indefinite way that it is impossible to consider it an obligation." The employer supposedly told plaintiff, "as they walked down State Street in Chicago, that their arrangement was a permanent one." The court also stated, without elaboration, "It is not sufficient consideration for a contract of permanent employment to forego another employment opportunity. [Citations from other jurisdictions.]" 23 Ill. App. 2d 231, 236, 161 N.E.2d 875, 878.

This latter statement apparently has not been analyzed or reviewed in later Illinois cases and it also appears that the statement is, at least, overbroad. In fact, we believe it represents a misstatement of the consideration concept. The essential element of consideration is a bargained-for exchange of promises or performances, and may consist of a promise, and act, a forbearance, or the creation, modification, or destruction of a legal relation. (Restatement (Second) of Contracts sec. 71 (1981).) If the consideration requirement is met, there is no additional requirement of a gain or benefit to the promisor; a loss or detriment to the promisee; equivalence in the values exchanged; or "mutuality of obligation." (Restatement (Second) of Contracts sec. 79 (1981).) Taking plaintiff's well-pleaded allegations as true, as we must on a motion to dismiss (*Pfendler v. Anshe Emet Day School* (1980), 81 Ill. App. 3d 818, 821, 401 N.E.2d 1094), he agreed to relinquish a more lucrative offer with another employer in exchange for job security with his current one. Federal agreed to relinquish its right to terminate plaintiff "at will" in exchange for the retention of a valued employee who was about to join a competing firm. If the parties bargained for and exchanged such promises, the consideration element would appear to be satisfied, and to the extent the *Heuvelman* case holds otherwise, it seems to create a special rule for permanent employment contracts that does not apply to other types of contracts. We do not believe this to be a sound application of contract law. Moreover, if there is a particular policy reason for the requirement of separate, additional consideration for contracts of permanent employment, the *Heuvelman* court did not articulate it.

■ We have found instructive, however, an article entitled "Validity and Duration of Contract Purporting to be for Permanent Employment" (Annot., 60 A.L.R.3d 226 (1974)). There it is noted that "for reasons of lack of mutuality and indefiniteness, it is usually held that

contracts for permanent or lifetime employment, when unsupported by consideration additional to services, are indefinite in nature and terminable at the will of either party." (Annot., 60 A.L.R.3d 226, sec. 2[a], at 233 (1974).) Thus, if an employer expresses his hope or intention that the employment relationship will last "forever," that representation, without more, will not generally transform a terminable at will contract into one for permanent employment.

This principle appears to be a recognition that in cases involving a vague or general expression of permanency the parties probably only intended to work together for as long a period as mutually satisfactory, with either party retaining the power to terminate the relationship at any time. Thus, "permanency" connotes steady, rather than temporary, employment, but not necessarily "lifetime" employment. To distinguish such terminable at will contracts from ones that are truly intended to be "for life," the courts have evolved the requirement of "additional consideration," apart from the primary exchange of services for wages. As several courts have observed, however, the general rule of additional consideration is a misconception. It is actually a rule of convenience to be applied if the parties' intent regarding the permanent nature of employment is not clear. If the parties' intention is clearly manifested there is no requirement for "additional" consideration. (*Eilen v. Tappin's, Inc.* (1951), 16 N.J. Super. 53, 56-59, 83 A.2d 817, 818-19.) Other cases have approved the rule that a lifetime employment contract will be given effect, according to its terms, if the parties' intention to make such agreement is clear, "even though the only consideration for it, so far as the employer is concerned, is the promise of the employee to render the service called for by the contract." *Eggers v. Armour & Co.* (8th Cir. 1942), 129 F.2d 729, 731, cited in *Molitor v. Chicago Title & Trust Co.* (1945), 325 Ill. App. 124, 135, 59 N.E.2d 695, 699.

■ Viewed as a rebuttable presumption in favor of a terminable at will employment relationship, the additional consideration concept may be useful in certain cases. For example, an employee's bare allegation that he was hired for life, without any additional circumstances to indicate that the parties intended such an arrangement, would be insufficient to overcome the presumption. But where, as in the pending case, the employee's allegations specify the circumstances under which he entered into the new or modified contract with his employer for permanent employment, his complaint should at least withstand a motion to dismiss. (See *McNulty v. Borden, Inc.* (E.D. Pa. 1979), 474 F. Supp. 1111.) Notwithstanding the *Heuvelman* dictum that it is insufficient consideration to forego other employment opportunities, we believe

that when the employee gives up another offer in exchange for and in reliance upon the employer's promise of permanent employment, that contract, if proved, is enforceable. Other jurisdictions approve this result. *E.g., Fletcher v. Agar Manufacturing Corp.* (W.D. Mo. 1942), 45 F. Supp. 650, 651-52; *Pugh v. See's Candies, Inc.* (1981), 116 Cal. App. 3d 311, 171 Cal. Rptr. 917.[1]

### The Requirement of Mutuality

▮▮ We also reject defendants' contention that the parties' agreement is unenforceable under the mutuality of obligation doctrine. Although defendants do not clearly explain their objection based on this principle, apparently they object to plaintiff's ability to terminate the permanent employment relationship at his discretion without an identical corresponding right on defendants' side. As our supreme court has noted, however, while consideration is an essential element for the creation of an enforceable contract, mutuality is not. (*Armstrong Paint & Varnish Works v. Continental Can Co.* (1921), 301 Ill. 102, 103, 133 N.E. 711.) "Where there is no other consideration for a contract the mutual promises of the parties constitute the consideration, and these promises must be binding on both parties ***." (301 Ill. 102, 108.) Conversely, if a promise is merely illusory, that is, a party does not in fact bind himself, his promise will not support a contract. As one court perceived, "The doctrine of mutuality of obligation appears therefore to be merely one aspect of the rule that mutual promises constitute considerations for each other." *Ryan v. Upchurch* (S.D. Ind. 1979), 474 F. Supp. 211, 218. See also *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 129, 421 N.E.2d 876, 878 ("Recent analysis has pointed out the shortcomings of the mutuality theory").

▮▮ In the pending case, plaintiff relinquished his right to accept the other job offer in exchange for defendants' relinquishment of the right to terminate plaintiff at will. Since the parties' promises need not be of the same type to constitute consideration (see *Aldrich v. Aldrich* (1931), 260 Ill. App. 333, 352-53), we conclude that "mutuality" is not lacking or necessary. (See Restatement (Second) of Contracts sec. 79 (1981).) Plaintiff may face difficult problems of proof, but we hold that

---

[1]Not every relinquishment of a job or job offer, however, will be sufficient consideration to support an alleged agreement of permanent employment. Courts have realized that a person necessarily must give up or terminate a prior job in order to accept a new one and, absent other circumstances, the relinquishment of the prior job does not render the new employment offer anything more than a hiring for indefinite duration. Annot., 60 A.L.R. 226, sec. 2[a], at 234-35; sec. 7[a] and cases cited therein (1974).

the allegations of count I state an action for breach of express oral contract.

In light of our finding that consideration has been sufficiently alleged, we need not discuss plaintiff's promissory estoppel theory, which may be used as a substitute for consideration in certain circumstances. See Restatement (Second) of Contracts sec. 90 (1981); *Wickstrom v. Vern E. Alden Co.* (1968), 99 Ill. App. 2d 254, 240 N.E.2d 401.

### The Requirement of a Writing

Defendants alternatively argue that even if the contract were properly formed, its enforcement is barred by the Statute of Frauds. (Ill. Rev. Stat. 1979, ch. 59, par. 1.) The statute prohibits oral contracts not to be performed within the space of one year from the making thereof. The test is simply whether the contract by its terms is capable of full performance within a year, not whether such occurrence is likely. (*Stein v. Malden Mills, Inc.* (1972), 9 Ill. App. 3d 266, 292 N.E.2d 52.) In general, lifetime employment contracts have not been held barred by the Statute of Frauds. (See Annot., 60 A.L.R. 226, sec. 16 (1974).) Defendants rely, however, on *Sinclair v. Sullivan Chevrolet Co.* (1964), 45 Ill. App. 2d 10, 195 N.E.2d 250, *aff'd* (1964), 31 Ill. 2d 507, 202 N.E.2d 516. In *Sinclair*, a contract was entered into on May 30, 1960, and was to remain in effect "for at least one year," starting June 6, 1960. Hence, the contract literally could not be performed within one year from the date of its formation on May 30, 1960. The court rejected the plaintiff's argument that he could die within a year, thereby ending the contract within that time. In holding the contract unenforceable under the Statute of Frauds, the court distinguished between performance of the contract and mere termination because of death, stating that "[i]n every employment contract the contract is subject to termination at the death of the employed party, but this does not mean the contract has been performed in full." The court further stated, however, that "[w]here the contract extends to a point in time, be it death or some other circumstance, at which time the full service contemplated will have been rendered, and that point in time could occur within one year, the Statute of Frauds will not be a bar to enforcement of the action." *Sinclair v. Sullivan Chevrolet Co.* (1964), 45 Ill. App. 2d 10, 15, 195 N.E.2d 250, 252.

In the pending case, plaintiff's retirement from business pursuits or his voluntary departure from Federal are contingencies that could have occurred within a year, in which case the contract would have been fully performed. We therefore believe that the Statute of Frauds is not a bar to enforcement.

COUNT II: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

The operative allegations of this count are as follows:

"20. At the time of Martin's discharge, there were positions at Federal which Martin was qualified to fill, and which were not offered to him.

21. Martin's discharge, without notice, irreparably damaged Martin's reputation by its suggestion of poor performance, incompetence or wrongdoing on Martin's part, and so stigmatized him that it disabled him from finding substitute employment at equivalent compensation, responsibilities, and job satisfaction.

22. Martin was not in fact guilty of poor performance, incompetence, or serious wrongdoing and was never confronted by Federal with any accusation to that effect.

23. No cost or burden would have been imposed on Federal had it retained Martin in his position for a period of months to enable him to seek other employment, and doing so would have greatly mitigated the harm to Martin's ability to find substitute employment. Federal refused to continue Martin in his present position or some other position while he sought substitute employment.

24. The aforesaid conduct thereby deprived Martin of the essential benefit conferred upon him by the agreement, constituted unfair dealing, and was done in bad faith with the knowledge that it would greatly injure Martin, or in reckless disregard of the likelihood that such damage would result."

Plaintiff's theory is that all contracting parties owe to each other a duty of good faith and fair dealing that is tortiously violated whenever one party takes an action designed to deprive the other of the essential benefits of the agreement. Thus, count II appears to be an attempt to state a tort cause of action premised on a bad faith breach of contract.

Various authorities have discussed the general principle that contracting parties have a good faith and fair dealing covenant implicit in their agreements; however, according to our understanding of the principle, it is essentially used as a construction aid in determining the parties' intent. Hence, in *Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 286, 154 N.E.2d 683, the supreme court stated, "Every contract implies good faith and fair dealing between the parties to it, and where an instrument is susceptible of two conflicting constructions, one which imputes bad faith to one of the parties and the other does not, the latter construction should be adopted. (12 I.L.P., Contracts, sec. 217.)" Accord, *Pierce v. MacNeal Memorial Hospital Asso-*

*ciation* (1977), 46 Ill. App. 3d 42, 51, 360 N.E.2d 551; *cf. Pugh v. See's Candies, Inc.* (1981), 116 Cal. App. 3d 311, 171 Cal. Rptr. 917 (California law permits a terminable at will employee a cause of action based on his longevity of service or on the employer's expressed policy to give employees termination hearings).

While we agree that the same conduct may give rise to both tort and contract theories of recovery in some cases, we do not believe that Illinois law recognizes a tort remedy based on an employer's "bad faith" breach of an implied contract covenant of fair dealing.[2] As previously discussed, in limited circumstances a terminable at will employee has an action for wrongful discharge despite the general maxim that such an employee may be discharged for any or no reason. (*Kelsay v. Motorola, Inc.; Palmateer v. International Harvester Co.*) In such cases there is no actionable breach of employment contract, but the law nonetheless implies a duty in tort based on public policy. In contrast, employees, such as plaintiff, who have expressly bargained for permanent employment, have a right of action based on the contract itself, and do not need tort principles. In extreme cases, an employer's breach of the contract may also give rise to an independent tort, such as intentional infliction of mental distress, but we believe plaintiff's allegations in count II fall far short of stating an inde-

---

[2]There is a line of Illinois insurance cases in which a common law tort action has been approved as a vehicle for awarding compensatory and even punitive damages to insureds when their insurer refuses to settle claims in good faith. The seminal case, *Ledingham v. Blue Cross Plan* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540, *rev'd on other grounds* (1976), 64 Ill. 2d 338, 356 N.E.2d 75, extensively discusses and then follows California law, concluding that the parties to a life and health insurance relationship have a duty to deal fairly with each other in good faith, the breach of this duty constituting both a tort and a breach of contract. The court went on to discuss two possible theories concerning such a tort, one being that if the conduct was sufficiently outrageous, it could result in liability for intentional infliction of emotional harm. Under a second theory, less than "outrageous conduct" but still a "bad faith" refusal to make payments under the policy could constitute a "tortious interference with a protected property interest of its insured for which damages may be recovered." (29 Ill. App. 3d 339, 351, 330 N.E.2d 540, 549.) Later cases have refused to follow *Ledingham's* rationale because of the Insurance Code's express provision, thought to be preemptive, which allows for recovery of certain costs and attorney fees if the insurer's conduct is "vexatious" and "unreasonable." *Debolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 371 N.E.2d 373; *Tobolt v. Allstate Insurance Co.* (1979), 75 Ill. App. 3d 57, 393 N.E.2d 1171; *Siegal v. Health Care Service Corp.* (1980), 81 Ill. App. 3d 784, 401 N.E.2d 1037. Contra, *Lynch v. Mid-America Fire & Marine Insurance Co.* (1981), 94 Ill. App. 3d 21, 418 N.E.2d 421.

We express no opinion as to the soundness of the *Ledingham* rationale but decline to expand the tort theories advanced there into the employment context by analogy.

pendent tort action. Most of the allegations are conclusory; for example, the charge that plaintiff was stigmatized by the discharge. Moreover, the statement that Federal should have given plaintiff another available position does not seem a cognizable breach of tort duty or contract obligation.

■■ Care must be taken to prevent the transmutation of every breach of contract into an independent tort action through the bootstrapping of the general contract principle of good faith and fair dealing. We conclude that existing principles of tort law are adequate without our creating a new action based on a vague notion of fair dealing. A general "bad faith" tort based on breach of contract would undoubtedly be difficult to apply in most cases and superfluous in cases such as the present one, which primarily sounds in contract. (See *Album Graphics, Inc. v. Beatrice Foods Co.* (1980), 87 Ill. App. 3d 338, 408 N.E.2d 1041 (court refused to recognize a cause of action in negligence to recover purely contractual remedies for breach of contract). We hold that the trial court properly dismissed count II for failure to state a cause of action.

COUNT III: DEFENDANT AUSTIN'S TORTIOUS INTERFERENCE WITH THE CONTRACT BETWEEN PLAINTIFF AND FEDERAL

The elements of a cause of action for tortious interference with contractual relations are: (1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existing contract; (3) intentional and malicious inducement of the breach; (4) the subsequent breach by the third person due to the defendant's wrongful conduct, and resulting damages incurred by the plaintiff. *Pfendler v. Anshe Emet Day School* (1980), 81 Ill. App. 3d 818, 401 N.E.2d 1094.

The operative allegations of count III are that Austin knew of the employment contract between plaintiff and the corporation, orally assuring plaintiff his employment was not in jeopardy and, further, that:

"26. On or about March 18, 1977, Austin, without regard to the consequences to Martin but aware of what such consequences would be, without prior notice or disclosure to the full board of directors which had only recently elected Martin a Vice President, caused Federal's Executive Committee to meet and, on information and belief, proposed, insisted on, and voted for the discharge of Martin as part of a program to solidify his own personal control over the management of Federal and assuring his own job security by eliminating experienced and capable managers who might detect errors in his decisions or bring such errors to the attention of the Board of Directors.

27. The discharge of Martin was against the best interests of Federal because:

(a) it damaged employee morale by violating long-standing company policies and obligations to employees;

(b) it deprived Federal of the valuable services of Martin; and

(c) it restricted the ability of the Board of Directors to manage the corporation by inhibiting the free flow of information concerning Federal from management employees to the Board.

28. But for Austin's proposal of and insistence upon Martin's discharge, Martin would not have been discharged from Federal."

We do not find these allegations sufficient to plead an action for tortious inducement of breach of contract. While pleadings are to be liberally construed (Ill. Rev. Stat. 1981, ch. 110, par. 33(3)), the legal sufficiency of a complaint requires more than mere conclusions. Plaintiff's averment that Austin's actions were motivated by a personal purpose or intent, without a factual statement showing such purpose or intent is a conclusion. (See *Bergfeld v. Stork* (1972), 7 Ill. App. 3d 486, 491, 288 N.E.2d 15.) What is primarily missing from this count is the third element of the tort, Austin's "intentional or malicious inducement" of the breach by Federal. In *Worrick v. Flora* (1971), 133 Ill. App. 2d 755, 272 N.E.2d 708, the court affirmed the dismissal of an action for tortious interference with contractual rights, holding that a corporate officer has the right to exercise his duties without liability even though the employment relations of others may be affected. Plaintiff, a terminable at will employee, had been discharged according to his complaint, "intentionally and without just cause." The court reviewed the meaning of "malice" as used in the tort and concluded that "the theory of liability depends on considerations of privilege or justification" (*Worrick v. Flora* (1971), 133 Ill. App. 2d 755, 758), since some conduct which may harm a competitor may nevertheless be lawful or "privileged." (See *Doremus v. Hennessy* (1898), 176 Ill. 608, 52 N.E. 924.) In holding that the complaint failed to state a cause of action, the *Worrick* court stated that the allegations were entirely lacking in any facts from which it could be inferred that defendant was acting other than in accord with his usual and customary duties.

In *Worrick*, as in the pending case, plaintiff was not accused of misconduct or incompetence. Assuming his alleged oral contract with Federal for permanent employment is valid, Austin's interference with it must have been intentional and unprivileged to be actionable. The allegations of count III characterize Austin as the moving force behind his discharge, but lack a sufficient statement of facts to support an

inference of improper, unprivileged behavior with respect to corporate policies or procedures. Plaintiff refers to a March 18, 1977, meeting that Austin allegedly caused "without prior notice" to the full board of directors, wherein he insisted and voted for plaintiff's discharge as part of a program to solidify his own job security by eliminating experienced and capable managers. ***." Attached to defendant's motion to dismiss, however, is an affidavit of Federal's acting secretary at the time of the meeting, James J. Breen. The affidavit quotes corporate bylaws which authorize the executive committee to manage the corporation during the interim between the meetings of the full board. Attached to the affidavit are the minutes of the March 18 meeting, attended by the executive committee, Austin, Breen and A.G. Williamson. According to the minutes, the committee "discussed elimination of two senior officer positions; it was determined that it was in the best interests of the company to proceed as soon as possible with the implementation of such plan. Alternatives were discussed ***."

■■ While we do not rely on this document for its evidentiary value on this motion to dismiss, we note that plaintiff's complaint lacks any indication that Austin improperly "caused" the executive meeting or violated any bylaws or corporate policies. He does allege the violation of "long-standing" policies, but does not supply any factual basis of support beyond the conclusory allegation. We conclude that the trial court properly dismissed count III of the complaint against defendant Austin as lacking sufficient factual allegations.

For the reasons discussed herein, we reverse the trial court's dismissal of count I of the complaint and hold that for purposes of the motion to dismiss, plaintiff states a cause of action for the breach of an oral contract of permanent employment between himself and Federal. We affirm the dismissal of count II for failure to state a cause of action on the theory of breach of the covenant of good faith and fair dealing and alternatively for failing to allege sufficient facts to support an action in tort. Finally, we affirm the dismissal of count III against defendant Austin as being legally insufficient to state the elements of tortious inducement of breach of contract.

Reversed in part, affirmed in part, and remanded for further proceedings.

LORENZ and MEJDA, JJ., concur.