**PARK ELECTRIC COMPANY, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 701, AFL–CIO, a labor organization, Defendant.**

**No. 81 C 6577.**

United States District Court,
N.D. Illinois, E.D.

Sept. 11, 1984.

See also 540 F.Supp. 779.

E. Allen Kovar, Henry W. Sledz Jr., Chicago, Ill., for plaintiff.

John T. Toomey, Arnold & Kadjan, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

The question for decision is the appropriate statute of limitations to apply to suits brought under section 303 of the National Labor Relations Act (the "N.L.R.A."), 29 U.S.C. § 187 (1982), in light of the Supreme Court's recent decision in *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Plaintiff, Park Electric Company, commenced this suit on November 24, 1981, alleging that the defendant union, Local 701 of the International Brotherhood of Electrical Workers, engaged in a boycott of a general contractor in late October and early November of 1977, which caused the general contractor to repudiate its subcontracting contract with plaintiff. Plaintiff's claims in antitrust and state tort law have been dismissed. Defendant now moves for summary judgment on plaintiff's remaining claim under section 303 of the N.L.R.A., contending that the *DelCostello* decision

requires that we apply the six-month statute of limitations found in section 10(b) of the N.L.R.A., 29 U.S.C. § 160(b) (1982), under which plaintiff's complaint would be time-barred. Because we find that the appropriate statute to borrow is a state statute under which plaintiff's complaint is timely, defendant's motion is denied.

## I. *Background*

Section 303 of the N.L.R.A. is part of a dual remedial scheme directed against secondary boycotts. The section makes those secondary boycotts which constitute unfair labor practices under section 8(b)(4) of the Act, 29 U.S.C. § 158(b)(4) (1982), unlawful as well, and provides a private right of action for persons injured by such conduct. *See* 29 U.S.C. § 187 (1982). While the six-month statute of limitations found in section 10(b) for filing unfair labor practice charges with the N.L.R.A. governs section 8(b)(4) charges, Congress did not specify a statute of limitations for suits filed under section 303.

Courts have generally applied to section 303 cases what they deemed to be the most analogous state statute of limitations. *See, e.g., International Union of Operating Engineers v. Fischbach & Moore, Inc.,* 350 F.2d 936, 937–939 (9th Cir.1965), *cert. denied sub nom Draucker, Inc. v. International Union of Operating Engineers,* 384 U.S. 904, 86 S.Ct. 1336, 16 L.Ed.2d 358 (1966); *United Mine Workers v. Meadow Creek Coal Co.,* 263 F.2d 52, 61–63 (6th Cir.), *cert. denied,* 359 U.S. 1013, 79 S.Ct. 1149, 3 L.Ed.2d 1038 (1959); *cf. Daniel v. International Brotherhood of Teamsters,* 410 F.Supp. 541, 554 (N.D.Ill.1976), *aff'd,* 561 F.2d 1223 (7th Cir.1977), *rev'd on other grounds,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979) (applying state statute of limitations to suit under § 302(e) of N.L.R.A.). We must now, as a matter of first impression, examine this practice in light of *DelCostello, see supra,* in which the Supreme Court found that the six-month statute of limitations in section 10(b), rather than any state provision, applies to certain suits brought under section 301, 29 U.S.C. § 185 (1982), another private right of action

created by the.N.L.R.A. without an express statute of limitations.

## II. *DelCostello*

In order to assess the applicability of the Court's reasoning in *DelCostello,* we must trace with particularity what was at issue in that case. The statutory provision under which the *DelCostello* suit arose, section 301, provides a private right of action for violations of labor contracts. Where parties to a collective bargaining agreement have agreed to submit contract disputes to arbitration, however, they must attempt to exhaust the arbitration remedy in lieu of pursuing the section 301 remedy and can seek only limited judicial review. *See DelCostello,* 103 S.Ct. at 2290; *Vaca v. Sipes,* 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967). But the Supreme Court has carved out an exception to this rule. In the event that an employee's union fails to provide fair representation in the arbitration proceeding, the employee is entitled to seek judicial enforcement of his or her contractual rights. *Hines v. Anchor Motor Freight,* 424 U.S. 554, 570–571, 96 S.Ct. 1048, 1059–1060, 47 L.Ed.2d 231 (1976); *Vaca,* 386 U.S. at 185–186, 87 S.Ct. at 914–915. Thus section 301 has been construed to cover "hybrid" suits by employees against both their union, for breach of the duty of fair representation during arbitration, and their employer, for breach of contract. These suits are hybrid in the sense that they comprise both the express remedy provided by section 301 and a remedy implied by the judiciary to effectuate the express provision. *Cf. Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

The precise question in *DelCostello* was the appropriate statute of limitations to apply to such hybrid suits. Earlier, in *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), the Supreme Court had determined that, as between two state statutes of limitations advocated by the parties, a statute governing actions to vacate arbitration awards should be applied to the branch of the suit against the employer. Two years

later, the Court reconsidered the issue in *DelCostello* in a different light. Certiorari was granted as to both the employer and the union, so that the Court considered the appropriate time limit governing both branches of the hybrid suit, and the Court was faced with the contention that section 10(b) rather than any state provision should be adopted. *DelCostello*, 103 S.Ct. at 2285. The Court decided to adopt the section 10(b) rule, but on narrow grounds that do not apply to the case before this court.

In its decision the Court provided the following guidelines for determining appropriate statutes of limitations in the face of Congressional silence. When a statute gives rise to a right of action without providing an express statute of limitations, the "fallback rule of thumb" is that Congress intended courts to follow their normal practice of borrowing the most analogous state statute of limitations. *Id.* at 2287, 2287 n. 12, 2294. If a court finds, however, that state rules are so ill-suited as to be at odds with the purpose or operation of the federal statute creating the cause of action, then the court can look to federal law for a closer analogy than state rules provide. *Id.* at 2289, 2294.

The Court found the *DelCostello* suit itself to be such a case. The Court selected different state rules as most analogous to each of the two branches of the suit—to the branch of the suit against the union, the limit for filing malpractice actions, and to the branch against the employer, the time limit for actions to vacate arbitration awards—and determined that each rule would in various ways frustrate the purpose of one or the other branch of the hybrid suit. *Id.* at 2291–2293. For instance, the Court found that, on the one hand, most state statutes of limitations for suits to vacate arbitration awards, while acceptable to govern the branch of section 301 suits against the employer, *see Mitchell*, 451 U.S. at 64, 101 S.Ct. at 1564, are too short where the goal of overturning an arbitration decision is compounded by the fact of lack of adequate representation at arbitration. *DelCostello*, 103 S.Ct. at 2291. Conversely, the lengthy time generally allowed for filing malpractice suits would frustrate federal labor law's goal of rapid resolution of labor disputes involving agreements which continue to bind the contending parties. *Id.* at 2292–2293.

Only after determining the inadequacy of applying these state rules to section 301 hybrid suits did the Court look to section 10(b) and find it particularly apt. The Court noted that the breach of the duty of fair representation by a union is itself an unfair labor practice or at least bears a "family resemblence" to one. *Id.* at 2293. Since Congress designed section 10(b)'s limitation period to accommodate the various interests at stake in the resolution of unfair labor practices involving collective bargaining agreements, *id.* at 2204 (quoting *Mitchell*, 451 U.S. at 70–71, 101 S.Ct. at 1567–1568 (Stewart, J., concurring)), the Court found that this rule would best serve the purposes of hybrid section 301 suits.

### III. *Analysis*

■ A fair reading of *DelCostello* does not suggest, as defendant contends, that any cause of action based on an unfair labor practice must be commenced within the time limit established by section 10(b). That state law should be our starting point is clear from the Court's reasoning, as described *supra*, and its language, including a final caution that "our holding today should not be taken as a departure from prior practice in borrowing limitation periods for federal causes of action.... [R]esort to state law remains the norm for borrowing the limitation periods...." *Id.* 103 S.Ct. at 2294. The Court considered the suitability of section 10(b) only after rejecting state law alternatives for reasons having to do with the particular nature of the hybrid section 301 suit and not simply because the suit embraced an unfair labor practice claim. In fact, both dissenters to the opinion focused not on whether the section 10(b) rule is suitable, an undisputed point, but rather on their view that state law would and should have sufficed. *See, id.* at 2295 (Stevens, J., dissenting); *id.* at 2296 (O'Connor, J., dissenting). Our job,

then, is to determine whether the purpose or policy of section 303 would be frustrated, as a majority of the Supreme Court found in regard to one type of suit arising from section 301, by application of a state rule of timeliness.

■ We first determine that the most analogous state law cause of action to section 303 is that for tortious interference with contract. Plaintiff's claim, in essence, is that defendant, by exerting pressure in an unlawful manner, caused a third party to breach its contract with plaintiff, causing plaintiff injury. Such an allegation states the necessary elements of a tortious interference with contract claim under Illinois law. *See Martin v. Federal Life Insurance Co.*, 109 Ill.App.3d 596, 65 Ill.Dec. 143, 440 N.E.2d 998, 1006–1007 (1st Dist. 1982). In fact, the district court originally presiding over this case dismissed plaintiff's count alleging tortious interference with contract on the grounds that the N.L.R.A. preempts the state law remedy. *Park Electric Co. v. International Brotherhood of Electrical Workers, Local 701*, 540 F.Supp. 779 (1982) (order granting motion to dismiss). Illinois courts apply a five-year statute of limitations, Ill.Rev.Stat. ch. 110, § 13–205 (1983), to tortious interference with contract claims. *See Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 16 Ill.App.3d 709, 306 N.E.2d 549, 553 (1st Dist.1973), *rev'd in part on other grounds*, 61 Ill.2d 129, 334 N.E.2d 160 (1975) (referring to Ill.Rev. Stat. ch. 83, § 16 (1969), repealed and recodified in substantially same language at above cite).

In our judgment, the five-year limitation does not frustrate the operation of section 303. Admittedly, application of the five-year rule to section 303 actions on the one hand, and the six-month rule of section 10(b) to unfair labor practice charges under section 8(b)(4) on the other, bifurcates the course of the remedies available under the dual-remedial scheme for secondary boycotts. As far as we can ascertain, though, Congress intended the two remedies to proceed independently, one along the adminis-

trative route for unfair labor practices and the other along the conventional legal route for tort actions.

Among the indications that Congress meant to create distinct remedies despite any resulting institutional conflict are the facts that under the statutory scheme, an aggrieved party may pursue either remedy or both remedies simultaneously or in sequence; pursuit of section 303 suits does not depend on the National Labor Relations Board having determined that particular conduct constitutes an unfair labor practice; and decisions by either the agency or a court are not res judicata as to the other tribunal. *See* Gorman, *Labor Law* 293–295 (1976). As the Supreme Court wrote, "The fact that the two sections have an identity of language and yet specify two different remedies is strong confirmation of our conclusion that the remedies provided were to be independent of each other." *International Longshoreman & Warehousemen's Union v. Juneau Spruce Corp.*, 342 U.S. 237, 244, 72 S.Ct. 235, 239, 96 L.Ed. 275 (1952).

Furthermore, as a matter of statutory interpretation we see no grounds for concluding that Congress intended the section 10(b) rule to apply to section 303. To begin with, Congress calibrated section 10(b) to balance the competing interests involved in administrative proceedings encompassing the gamut of unfair labor practices, most of which, unlike secondary boycotts, involve disputes between parties with ongoing relationships. *See generally* 29 U.S.C. § 158 (1982). "Congress created § 10(b) of the NLRA to protect continuing collective-bargaining systems from delayed attack. The 6-month bar of § 10(b) is designed to strengthen and defend 'the stability of bargaining relationships.'" *Mitchell*, 451 U.S. at 68, 101 S.Ct. at 1567 (Stewart, J., concurring) (footnote and citation omitted). Thus section 10(b) was tailored neither to section 8(b)(4), nor, *a fortiori*, to the federal tort action created by section 303.

The applicability of section 10(b) is a different question here than in *DelCostello*, where the issue was the appropriate rule to

choose to apply to an implied cause of action which involved the very balance of bargaining parties' interests for which section 10(b) was designed, *see* 103 S.Ct. at 2294. With section 303 we deal with an express statutory provision which does not refer to section 10(b) and which involves parties who, but for the alleged tortious conduct, have no necessary relationship. We have no reason to believe that Congress signified by its silence an intention that section 10(b) apply here.

Rather, Congress' silence as to the appropriate time limit offers some indication that it intended state rules to govern. Given the judicial history since as early as 1830 of applying state timeliness rules in the absence of contrary Congressional provisions, *see UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703–704, 86 S.Ct. 1107, 1112, 16 L.Ed.2d 192 (1966), and the existence of the Rules of Decision Act, 28 U.S.C. § 725 (1940) (recodified in substantially same form at 28 U.S.C. § 1652 (1982)), we can most reasonably understand Congress' intention, if it had any particular intention, to be that courts apply state procedures for tort actions to section 303 suits. This is not a case, like *DelCostello*, in which the reason that the right of action in question lacks a governing statute of limitations is that the right has been implied by the judiciary. The absence of a governing statute for an implied right of action is "not comparable" to that for an express statutory creation. *Mitchell*, 451 U.S. at 68, 101 S.Ct. at 1567 (Stewart, J., concurring). We need not guess what Congress would have provided had it expressly created this remedy. We know instead that with a century of judicial application of state rules in the background, Congress did not specify a rule. Interpreting the similar silence of section 301 as to the time limit for bringing suits expressly provided for by that section, the Supreme Court determined that state law should be borrowed. "[W]e cannot take the omission in the present statute as a license to judicially devise a uniform time limitation for § 301 suits." *Hoosier*, 383 U.S. at 704, 86 S.Ct. at 1112.

Granted, we are not bound, either by the Rules of Decision Act or by the fact that the cause of action in question is express, to apply state rules. *See DelCostello*, 103 S.Ct. at 2287 n. 12 (hypothesizing that if section 301 hybrid suits were created expressly by statute, the Court would nevertheless apply section 10(b) rule because of comparative unsuitability of state law); *id.* at 2287–2288 n. 13 (discussion of Rules of Decisions Act); *id.* at 2289 (instances of decision not to apply state rules). Even if Congress did not expect state rules to control, though, according to *DelCostello* we would be justified in departing from the normal borrowing practice only if we found that the nature of the section 303 remedy rendered state law unsuitable.

We do not find that Illinois' five-year state statute of limitations is unsuitable. The contrast between the troublesome application of state law in *DelCostello* and the ease of application here is instructive. As mentioned *supra*, section 303 suits involve neither parties who must bargain together in the future nor resolution of disputes over contracts that continue to have binding effect. These suits do not, like hybrid section 301 suits, combine actions of different natures against different parties, *compare DelCostello*, 103 S.Ct. at 2291–2292, 2293 n. 19, or follow failed attempts at arbitration, *compare id.* at 2291–2292. Application of a state rule to the lawsuit and of section 10(b) to the administrative procedure does not thwart either remedy, for example by placing plaintiffs in a bind whereby damages might become uncollectable. *Compare id.* at 2292.

█ Rather, section 303 suits are simply damage actions for tortious conduct. Thus, state procedural rules for tort actions are by definition applicable. It is more likely that we would err by applying a six-month bar, which might not provide a period sufficient for plaintiffs to become aware of injury and the extent of damages, than by applying a bar traditionally governing tort actions. While a rule making section 8(b)(4) and section 303 proceedings concurrent might be advantageous, this

Court's job is not to legislate the rule of its choice. Because we find application of state law appropriate and plaintiff's complaint was filed well within the five-year limitation period provided by Illinois law, we deny defendant's motion for summary judgment.