JOAN M. SHERWIN *et al.*, Plaintiffs-Appellees, v. GEORGE L. AULT, Defendant-Appellant.

Third District   No. 3—90—0858

Opinion filed September 25, 1991.

Quinn, Johnston, Henderson & Pretorius, of Peoria (Zane L. Lucas, Jr., of counsel), for appellant.

Barash, Stoerzbach & Henson, of Galesburg (Burrel Barash, of counsel), for appellees.

JUSTICE BARRY delivered the opinion of the court:

Plaintiffs Joan M. Sherwin and Richard S. Murphy are owners of farmland situated primarily in Warren County, Illinois. During the 1987 crop year, defendant George L. Ault farmed the land pursuant to a written "operating agreement" drafted by Sherwin, an attorney, and signed by her and Ault on February 12, 1987. The six-page docu-

ment extensively details the parties' rights and responsibilities and recites in relevant part as follows:

> *"Term* The term of this agreement shall be from March 1, 1987, to December 31, 1987, or such time as the crop grown on the Farm is completely harvested and either sold or placed into storage facilities.
>
> This agreement is not intended to be a lease of the land and shall not continue from year to year after expiration of the initial term. This instrument in itself constitutes notice to the Operator of the termination of the Agreement on December 31, 1987, and no further notice shall be required."

On October 13, 1987, defendant spoke with Sherwin about renewing their agreement for the 1988 crop year. Sherwin said "okay" and that she would forward the "paperwork" to Ault at a later date. According to Ault, Sherwin indicated that the agreement would be the same as for 1987. The new agreement was not sent, and in January 1988, Ault approached Sherwin and repeated his desire to farm the land in 1988. At that time, Sherwin said only, "I'll think about it." Still nothing was sent. Then, on February 20, Ault informed Sherwin that he had done all of his paperwork for the 1988 crop year and just needed their signatures to proceed. At that point, Sherwin told Ault that he was not going to be farming her land. Ault nevertheless attempted to enter the land with his tractors in March, and on March 25, 1988, Sherwin brought this action for declaratory judgment and injunctive and monetary relief.

Defendant answered the complaint and counterclaimed for damages and other relief. The parties conducted discovery and both moved for summary judgment. On November 21, 1990, the trial court granted summary judgment in plaintiff's favor on one count of the main complaint and on three counts of the countercomplaint. The court ruled that the parties did not intend to be contractually bound by their informal conversation relative to the renewal of their farming arrangement on October 13, 1987, and that, in any event, the Statute of Frauds (Ill. Rev. Stat. 1989, ch. 59, par. 1) would preclude enforcing any oral agreement made on October 13, 1987, because it was not reasonably capable of being performed by October 13, 1988. The court also found that there was no just reason to delay enforcement of appeal, and defendant brought this appeal pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). We affirm.

Defendant initially challenges the trial court's determination that the Statute of Frauds (Ill. Rev. Stat. 1989, ch. 59, par. 1) applies on these facts. Defendant argues, under *Martin v. Federal Life Insur-*

*ance Co.* (1982), 109 Ill. App. 3d 596, 440 N.E.2d 998, that the Statute of Frauds applies to oral contracts which are not to be performed within the space of one year from the making thereof. Defendant, citing *Martin,* states that the test is whether it appears from a reasonable interpretation of the terms of the agreement that it is capable of performance within a year, not whether such occurrence is likely. Defendant then states that this court should determine, based on a review of the record, that a reasonable interpretation of the terms of the operating agreement indicates that the agreement is capable of being performed within one year. Defendant requests the court take judicial notice of the fact that many farmers in central Illinois and particularly in Warren County have the vast majority of their crops harvested by October 13 of each year. Plaintiff, in response, argues that it is clear by a review of the 1987 written contract that the "Term" of the operating agreement ended on December 31 of the crop year. Plaintiff further states that the section "Storage facilities" of the agreement provides for the defendant to use one-half of plaintiff's storage facilities until September 15 of the year following the crop year. Since both December 31, 1988, and September 1989 were more than a year after October 13, 1987, the plaintiff's argument is that any agreement entered into on October 13, 1987, which incorporates by reference the terms of the prior year's agreement, must have been in writing.

■ The statute provides in relevant part:

"[N]o action shall be brought *** to charge any person *** upon any agreement that is not to be performed within the space of one year from the making thereof, unless the *** agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized." (Ill. Rev. Stat. 1989, ch. 59, par. 1.)

The test for determining whether the statute bars a particular agreement is "whether the contract by its terms is capable of full performance within a year, not whether such occurrence is likely." (*Martin v. Federal Life Insurance Co.,* 109 Ill. App. 3d at 604, 440 N.E.2d at 1004.) The one-year period is measured from the time of the making of the agreement. Thus, in an employment contract where the parties orally agreed on May 31, 1960, to plaintiff's employment for a one-year period beginning June 6, 1960, the contract was held unenforceable by virtue of the Statute of Frauds. *Sinclair v. Sullivan Chevrolet Co.* (1964), 31 Ill. 2d 507, 202 N.E.2d 516.

The statute applied as well in a year-to-year farm lease arrangement wherein the parties orally agreed in the fall of 1936 to extend the terms of a written agreement dated March 1, 1934. (*Anderson v. Collinson* (1939), 300 Ill. App. 22, 20 N.E.2d 980.) The written lease in *Anderson* specified that it was for the period March 1, 1934, to March 1, 1935. Thereafter, the parties renewed it orally in the fall of 1934 and 1935 for the following crop year beginning on the succeeding March 1. Although the evidence was conflicting, the trial court believed plaintiff-lessee's testimony that the parties orally agreed to another extension in the fall of 1936 for the crop year of March 1, 1937, to March 1, 1938. The court ruled, however, that plaintiff's part performance by plowing and sowing small grain in the fall of 1936 in preparation for the 1937-38 crop year (a factor neither alleged nor appearing in the case before us today) was sufficient to avoid the Statute of Frauds.

■ In the case before us, although the February 1987 written agreement expressly states that it was not intended as a lease of land, it has characteristics of both a farm lease and an employment agreement. Applying controlling precedent as set forth in *Sinclair* and *Anderson*, it is readily apparent that the trial court did not err in holding that the Statute of Frauds bars enforcement of the parties' October 13, 1987, oral agreement. The written agreement extends by its terms from March 1 to December 31, 1987. An oral renewal of the agreement, to be enforceable as a contract by its terms capable of full performance within a year, would have to have been made after December 31, 1987. Any agreement for the March through December 1988 crop year which was made prior to December 31, 1987, would have to have been in some written form to avoid the bar of the Statute of Frauds. Since the facts are undisputed that there was no written note or memorandum of the October 1987 discussion agreeing to extend the written contract and no oral discussion to so extend it after December 31, 1987, we agree that the parties did not have an enforceable contract for the March through December 1988 crop year.

We do not subscribe to defendant's position that the Statute of Frauds does not control since it was *possible* that the oral contractual agreement could have been fully performed by completing the crop harvest for the 1988 season before October 13, 1988. As aforesaid, the test for determining the one-year period is measured from the date the agreement is made—in this case, October 13, 1987—and extends to the termination date agreed to by the parties. Reference to the terms of the written 1987 crop year agreement would determine the termination date of the oral agreement—December 31, 1988.

Defendant cites *Stein v. Malden Mills, Inc.* (1972), 9 Ill. App. 3d 266, 271, 292 N.E.2d 52, 57, in support of his argument that it was not impossible to complete the agreement within a year. In *Stein*, unlike here, the parties' agreement did not contain a specific date for the completion of performance. Rather, a contingency event was the only provision marking the end date. The parties agreed to plaintiff's employment "as long as the customer reordered the same style number of fabric." On review, the court noted that that event might never materialize or could happen at any time before the expiration of a year. Consequently, because it was possible pursuant to the terms of the agreement that performance could be fully completed within a year, the Statute of Frauds was no bar to its enforcement.

In this case, we need not speculate about the likelihood or possibility of completing harvest, storing grain or marketing it within any particular time period because the contract contained a specific date by which it would be considered fully performed. To the extent that the first paragraph of that section of the agreement entitled "Term" may be ambiguous in referring to the completion of harvesting and storage or sale of the crop, the second paragraph leaves no question but that the parties intended that their contractual rights would not be terminated before December 31 of the crop year. Because that end date fell more than a year after the parties agreed to renew their contract, any considered renewal of the agreement cannot survive the bar of the Statute of Frauds. Under the circumstances, we do not deem it necessary to comment upon plaintiff's argument in the alternative to the effect that the parties' contemplated contract would have extended until September 1989 by reason of the provision for storage.

Defendant also argues that his discussion with Mrs. Sherwin in October 1987 concerning a written operating agreement to be drafted and signed in the future was not "mere negotiations" rendering the discussion unenforceable for lack of definiteness. In this regard, defendant relies primarily on *Chicago Investment Corp. v. Dolins* (1985), 107 Ill. 2d 120, 481 N.E.2d 712, where the court ruled that if a prior agreement embodies the same terms as a subsequently contemplated formal agreement, a contract may be created upon the parties' proven intention to be bound even though the second formal agreement is not reduced to writing. The *Dolins* case involved a sale of a "package of hotels" owned by the Dolinses. After a series of negotiations, a letter was signed which mentioned five hotel properties by name and address, a purchase price, general terms of sale and financing and the seller's responsibility for the brokerage commissions.

The letter was referred to as a letter of intent. The letter of intent contained language which required that the final contract shall be in form and substance acceptable to attorneys for the seller and buyer. No final contract was ever written or signed by any of the parties. The issue in *Dolins* involved the question of whether the letter of intent could be specifically performed where it contained language about a subsequent formal agreement. No issue was presented to the court about the Statute of Frauds. The letter of intent was a written document and thus would have complied with the Statute of Frauds in any event. While we have no dispute with the rule of law stated in *Dolins*, it has no application in a case such as this that falls squarely within the Statute of Frauds.

In summary, we hold that the trial court committed no error in ruling that the parties' oral agreement of October 1987 was unenforceable as a matter of law. Defendant's motion for summary judgment was properly granted. The judgment of the circuit court of Warren County is affirmed.

Affirmed.

McCUSKEY and HAASE, JJ., concur.