Edgar R. ABERMAN, Plaintiff–
Appellant,

v.

J. ABOUCHAR & SONS, INCORPO-
RATED, Defendant–Appellee.

No. 97–1423.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 30, 1997.

Decided Nov. 18, 1998.

**1149**

that was never reduced to writing, and this suit concerns whether, under the oral agreement, Aberman was an employee of Abouchar or an independent contractor. The parties agree that under the terms of the oral contract Aberman was to be paid $2,500 per month by Abouchar, but they have differing recollections about what this sum was to represent: Aberman claims that the $2,500 per month constituted a base salary, while Abouchar contends that the amount of $2,500 per month was to be applied as a draw on commissions. It is interesting to note that Abouchar neither provided Aberman with vacation pay, any pension benefits, or health insurance, nor did it withhold any taxes from Aberman's compensation, and Abouchar, rather than carrying him on its employment IRS W–2 form, filed a 1099 form (non-employee form). The plaintiff, in his tax forms for taxable years 1994 and 1995, listed his occupation as "outside salesman" and did not refer to his employment as being that of an employee of Abouchar. Likewise, Aberman deducted business expenses from the income he received. The plaintiff-appellant, while serving as a sales representative, did not restrict himself to representing *only* Abouchar, but also continued in his efforts to sell the products of the companies he had previously represented. Aberman claims that he was simply "winding down" his association with these companies.

On February 27, 1995, about two and one half months after being hired, Aberman telephoned Ed Abouchar (a company vice president) to inform him that his (Aberman's) wife had just been diagnosed with lung cancer. Three days later, without any further communications between the parties, Abouchar terminated Aberman. Aberman filed suit against Abouchar on September 22, 1995, alleging that he had been discriminated against in violation of the employment provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* On September 30, 1996, at the close of discovery, Abouchar moved for summary judgment, asserting that Aberman was classified as an independent contractor and was never carried on Abouchar's books as an employee. The trial judge granted summary judgment to Abouchar, finding that Aberman was an

Maurice Grant (argued), Chicago, IL, for Plaintiff–Appellant.

Russell M. Pelton (argued), Kristen E. Crisp, Vineet Gosain, Oppenheimer, Wolff & Donnelly, Chicago, IL, for Defendant–Appellee.

Before CUDAHY, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Edgar Aberman appeals from the district court's order entering summary judgment in favor of J. Abouchar & Sons, Inc. under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* Affirm.

## I. BACKGROUND

In December 1994, plaintiff-appellant Edgar Aberman became part of the 25–person sales force of the defendant-appellee, Abouchar & Sons, Inc., a manufacturer. Before joining forces with Abouchar, Aberman had been an independent sales representative for four different companies. Aberman and Abouchar entered into an oral agreement

independent contractor and thus not covered by the ADA. Aberman appeals.

## II. ISSUE

Whether the district court properly granted summary judgment to the defendant Abouchar when it found that the plaintiff-appellant was an independent contractor and not an employee for purposes of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

## III. ANALYSIS

■ **Standard of Review.** We review the trial court's grant of summary judgment *de novo*, reviewing the record in the light most favorable to the non-moving party. *See Thomas v. Ramos*, 130 F.3d 754, 759 (7th Cir.1997). With this standard in mind, we turn to the issue of whether Aberman was an employee.

■ *Discussion.* "[T]he ADA protects 'employees' but not independent contractors." *Birchem v. Knights of Columbus*, 116 F.3d 310, 312 (8th Cir.1997). "The ultimate question of whether an individual is an employee or an independent contractor is a legal conclusion which involves an application of the law to the facts." *EEOC v. North Knox School Corp.*, 154 F.3d 744, 747 (7th Cir.1998) (internal quotation omitted). To determine whether a plaintiff was an employee or an independent contractor, the trial judge examines five factors which we set forth in *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377 (7th Cir.1991). "The first and most significant factor requires us to look at the amount of 'control' or 'supervision' that [Abouchar] exerted over [Aberman]." *North Knox School Corp.*, 154 F.3d at 747. *See also Knight*, 950 F.2d at 378 ("[T]he employer's right to control is the most important when determining whether an individual is an employee or an independent contractor."). The other factors are: (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations; (4) the method and form of payment and benefits; and, (5) the length of job commitment and/or expectations. *Knight*, 950 F.2d at 378–79, *quoted in*

*Alexander v. Rush North Shore Med. Ctr.*, 101 F.3d 487, 492 (7th Cir.1996). "Because the district court applied the proper [*Knight*] standard to [the employee/independent contractor] inquiry, we have only to review the court's factual determinations for clear error." *Ost v. West Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 438 (7th Cir.1996).

■ Aberman, in reference to the "control" factor, alleges that Abouchar maintained strict control over his activities, but in our opinion the record falls short of evidence in support of his claim. Aberman's evidence demonstrated that Ed Abouchar telephoned him no less than sixty-eight times between the beginning of December 1994 and the end of February 1995, but mere assertion of a number of phone calls (sixty-eight), and nothing more, falls far short of establishing the necessary control and direction of Aberman's activities—these conversations could have been updates, or exchanges of ideas, etc. Aberman attempts to bolster the probity of the phone records by alleging, in an affidavit prepared in response to the defendant's motion for summary judgment, that Ed Abouchar "gave me very detailed instructions on where to go, what to do, and how to conduct business for the Defendant." However, this is nothing but a conclusory allegation, and in the absence of supporting evidence "[c]onclusory allegations by the party opposing [a summary judgment] motion cannot defeat the motion." *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir.1995).

■ Another way that Aberman attempts to demonstrate Abouchar's strict control over him is to allege (also in his affidavit) that Abouchar permitted him to contact only three existing Abouchar clients (Sears, Montgomery Ward's and Spiegel's) and prohibited him from drumming up new business with companies which were not already clients of Abouchar. Aberman's contention in this regard is belied by his testimony at deposition, which contradicts his affidavit. In his deposition Aberman averred that, far from being *prohibited* from contacting new accounts, he was *expected* to, and *did*, seek out new accounts. Because we disregard an affidavit where it is in conflict with prior deposition testimony, *see Russell v. Acme–Evans Co.*, 51

F.3d 64, 67–68 (7th Cir.1995) ("Where deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken.[1] ...") (citations omitted), Aberman is bound by his deposition and cannot rely on his subsequent affidavit. In addition to the deposition testimony, Aberman is also bound by an admission contained in his Rule 12(N) Statement. Abouchar, in its Rule 12(M) Statement, had asserted that "Plaintiff understood that he was to sell the Abouchar & Sons' line to accounts with which he was familiar *and new accounts.*" (Emphasis added.) Aberman, in his responsive Rule 12(N) Statement, admitted to the veracity of this statement. He is bound by this concession, since "a failure to contest the opposing party's 12(M) facts is considered a binding admission of those facts." *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1313 (7th Cir. 1995).

Aberman's failure to present credible and convincing evidence in support of his claim that Abouchar "strictly controlled" his activities contrasts sharply with the evidence Abouchar submitted, evidence which demonstrates that Aberman enjoyed significant autonomy. Abouchar directs us to Aberman's own appointment calendar which reveals that Aberman, while working for Abouchar in January and February 1995, was still making sales calls for companies other than Abouchar. Additionally, Ed Abouchar testified that Aberman made *his own decisions* regarding the details of his work for Abouchar,[2] which obviously supports the conclusion that Aberman was, as the trial court found, acting as nothing more than an independent contractor. *See Spirides v. Reinhardt,* 613 F.2d 826, 831–32 (D.C.Cir.1979) ("If an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, *but also as to the details by which that result is achieved,* an employer/employee relationship is likely to exist.") (emphasis added), *quoted with approval in Ost,* 88 F.3d at 439.

The next factor we examine under *Knight* is "the responsibility for the costs of operation, such as equipment, supplies, fees, licenses, work place, and maintenance of operations." The record reveals that to some degree the parties split Aberman's costs. Abouchar paid for printed stationery and business cards listing Aberman as an Abouchar representative, and also paid for part of Aberman's travel expenses. Aberman, on the other hand, incurred far greater expenses himself, including a computer, mobile phone, telephone costs, postage and delivery, gifts, parking and tolls. His tax return for the taxable year 1995 also revealed that he declared 72% of his vehicle use that year as a business expense. Aberman's assumption of significant costs likewise favors a finding that Aberman was an independent contractor. *See, e.g., Hayden v. La–Z–Boy Chair Co.,* 9 F.3d 617, 622 (7th Cir.1993) (upholding district court's determination that the sales representative plaintiff was an independent contractor, where the district court found that the plaintiff had assumed the costs of his own business).

The fourth *Knight* factor, the method and form of payment and benefits, also favors a holding that Aberman was an independent contractor. Aberman contends that the $2,500 per month that he received as compensation from Abouchar was a base salary, but this claim is undercut by Aberman's own tax returns: in his tax returns for the relevant taxable years (1994 and 1995), Aberman did not list these $2,500 payments as wages, nor did he list Abouchar as an employer paying him wages. Aberman in fact did not report *any wages at all* on his tax returns for the taxable years 1994 and 1995 but, rather, listed all of his income as business income that he received as an "outside salesman." On the other hand, *Abouchar's* tax forms are consistent with its contention that the $2,500 was a draw: Abouchar withheld no taxes from Aberman's check and, instead of filing a W–2 tax form for Aberman, filed an IRS form 1099 for each of its twenty-five sales

---

1. Aberman does not argue that his deposition statement was mistaken.

2. Ed Abouchar testified "They [Abouchar's sales representatives] are supposed to follow up and do the work and do the details.... I don't call them up at 8 o'clock in the morning and say get out of bed and go call on this account and call on that account."

representatives, including Aberman. Also significant is the fact that Aberman received from Abouchar neither insurance, pensions, vacation pay, nor any other type of compensation that could be construed as a benefit.

The fifth factor is "length of job commitment and/or expectations." Aberman alleged that his position with Abouchar was permanent, but again, because he lacks evidence in support of his position (he relies solely upon his bald assertion), his contention fails. It was up to Aberman to rebut the presumption that he could be terminated at any time, *see Evans v. Gurnee Inns, Inc.*, 268 Ill.App.3d 1098, 206 Ill.Dec. 551, 645 N.E.2d 556, 559 (Ill.App.Ct.1994) (it is a "rebuttable presumption that a hiring without a fixed term is at will") (citation omitted), and Aberman's unsupported allegation failed to rebut that presumption. *See Martin v. Federal Life Ins. Co.*, 109 Ill.App.3d 596, 65 Ill.Dec. 143, 440 N.E.2d 998, 1003 (Ill.App.Ct.1982) ("[A]n employee's bare allegation that he was hired for life, without any additional circumstances to indicate that the parties intended such an arrangement, would be insufficient to overcome the [at-will] presumption."). Thus, even though Aberman might have expected that Abouchar had agreed to retain him permanently, we hold that as a matter of law he was subject to termination at-will.

AFFIRMED.·