WILLIAM STEIN, Plaintiff-Appellee, v. MALDEN MILLS, INC. et al., Defendants—(MALDEN MILLS, INC., Defendant-Appellant.)

(Nos. 55210, 55449 cons.;

First District—December 8, 1972.

Wildman, Harrold, Allen & Dixon, of Chicago, (Max Wildman, Thomas D. Allen, and Jerald P. Esrick, of counsel,) for appellant.

Robert E. Cherry and Gene K. Edlin, both of Chicago, (Joel Greenblatt, of counsel,) for appellee.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Plaintiff brought this action for an accounting seeking to recover damages for an alleged breach of an oral contract. Trial was had before the court sitting without a jury and two judgments totalling $78,158.09 were entered in favor of plaintiff. Defendant appeals to this court contending: (1) that the trial court erred in finding that plantiff had an enforceable contract with defendant; (2) that the trial court erred in awarding commissions to plaintiff for the period after the termination of his employment; (3) that evidence was improperly excluded; and (4) that the trial court's finding indicates its misconception of the case.

Plaintiff was a salesman with 40 years of experience in the upholstery industry. Malden Mills and American Velour Mills, which merged with Malden, (for purposes of this opinion both firms will be considered as one—Malden) wanted to enter the upholstery fabric market. Since the remainder of the facts are in dispute, it is necessary to present the theory of each side separately.

Plaintiff's evidence indicates that during the June 1967 furniture "market" he met Harry Goldstein, owner and president of American Velour; Milton Glasser, who Goldstein said represented Aaron Fuerstein, the president of Malden Mills; and Seymour Ett, an upholstery fabric salesman. At that meeting the proposed merger of American Velour and Malden Mills was discussed as was Malden's desire to enter the upholstery fabric industry. Plaintiff testified that the terms of employment were "I was to get five percent commission on all goods sold. Five percent commission on reorders of anything sold. Five percent commission as long as those customers would reorder those goods." Goldstein explained the terms to Glasser who knew nothing about the upholstery fabric business. Glasser agreed, they shook hands, and departed. No one indicated how long the employment relationship was to run or what effect, if any, termination would have on commissions.

Plaintiff's knowledge of the industry was used by Malden to develop its fabric line. Plaintiff proceeded to visit various potential customers, selling them small orders of fabric to be used on furniture at various shows. Based upon the response at the shows, he would then receive reorders for the goods. This way he obtained many new customers for Malden, but the efforts were all at his own expense, his only compensation being his commissions. Through plaintiff's efforts, this facet of Malden's business grew to over $2,000,000 in annual sales, while plaintiff's commissions grew from about $700 per month in July, 1967 to $3,000 per month in May, 1968.

At the June, 1968 furniture show plaintiff again had a conversation with Ett, Glasser, Fuerstein and Joseph Gosule, product manager of Malden's upholstery division. Fuerstein was very pleased with plaintiff's efforts. Shortly after that meeting, however, Gosule telephoned plaintiff and said his employment was terminated as of July 1, 1968 and he would receive commissions on everything on the books at that time.

Plaintiff testified that goods would typically be reordered by a customer for about three years, and as of the date of trial, December, 1969, customers were still buying the same style number he had originally sold them. The parties agreed at trial, however, that three years from June, 1967 would be a reasonable cut-off date for determining plaintiff's damages.

The evidence presented by defendant painted a somewhat different picture. Milton Glasser had over 30 years of experience in various phases of the textile industry and, at the time of the agreement between plaintiff and defendant, was an executive of Malden Mills in charge of product development. He was given the assignment to "develop lines" and to "do whatever was necessary" to "get into new fields." Glasser testified

that this included the authority to employ. Malden was contemplating entering the velour upholstery fabric industry but knew very little about it. In April or May of 1967, Goldstein introduced Glasser to plaintiff. They discussed the new market and Glasser asked plaintiff what compensation would be acceptable. Plaintiff said the customary commission was five percent. Glasser testified that he understood trade practice to require payment "on all sales that a man makes plus whatever comes in while he is in your employ" on reorders. On cross-examination, however, it was demonstrated that at the time Glasser's knowledge of the upholstery fabric industry was practically nil and he was not familiar with the custom in that industry regarding payment of commissions to a salesman after he leaves the company's employ. Glasser also stated that plaintiff started selling for Malden in April or May of 1967, made sales every month, and received an advance in early June, 1967. None of that testimony corresponds to the commission statements introduced by both plaintiff and defendant. Those statements indicated that the first commissions accrued to plaintiff in July, 1967, and the first advance made to plaintiff came on October 4, 1967. Plaintiff's employment was terminated in late June, 1968 because, according to Glasser, defendant felt that proper market coverage was not being obtained.

Defendant called plaintiff as an adverse witness and he testified that he was to receive commissions for reorders as long as the customer kept purchasing the style numbers he had sold. These commissions would continue as long as reorders were made but in no event past his death.

Before entering his findings, the trial judge made the following comments on the various witnesses:

"Mr. Glasser has been devious in his testimony * * *. As I observed his demeanor and I listened to him I said the witness is evasive, devious; he was certainly that, at least. Apparently Mr. Fuerstein is cut of the same cloth.[1]

* * *

The court is of the opinion that Mr. Stein, Mr. Ett, [plaintiff's witness], testified truthfully and forthrightly.

Mr. Glasser testified deviously, evasively and in a character and manner and tone and demeanor which left his testimony wholly unconvincing to this court.

Mr. Gosule testified in a more sincere manner and tone. His demeanor was such that the court felt that Mr. Gosule was telling partial truths. However, he was certainly an uninformed witness

[1] The judge was upset that Fuerstein had filed a false affidavit with the court. This action led to a $1000 fine against Malden Mills for contempt.

and he appeared to be merely an instrumentality under the domination of other executives with Malden Mills."

The court found in favor of plaintiff and ordered an accounting for the period of July 1, 1967 to November 30, 1969. Accountings were also ordered for monthly periods continuing until May 31, 1970. The amount due and owing for the first period totaled $62,312.05 and the court entered judgment in favor of plaintiff for that amount. The subsequent accountings totaled $15,846.04 and judgment was also entered in plaintiff's favor of that amount. Defendant appealed from both judgments and the cases were consolidated for consideration in this court.

■■■ First, it is necessary to consider whether the evidence was sufficient to support the court's findings. In this regard, defendant contends that the contract was too vague, indefinite and uncertain to be enforceable; that the finding that the contract provided for reorder commissions after plaintiff's employment was terminated was against the manifest weight of the evidence; and that plaintiff failed to prove that Glasser had authority to enter into the contract. The findings of the trial court are, of course, opposite these contentions and this court cannot substitute its opinion for the findings of the trier of fact unless the holding of the finder of fact is against the manifest weight of evidence, *i.e.*, an opposite conclusion must be clearly evident. (See *Comm v. Goodman* (1972), 6 Ill. App.3d 847, 852—854, 286 N.E.2d 758, 762—763.) It is not necessary at this point to reiterate the facts stated above. Suffice it to say that analysis of those facts demonstrates that the findings are supported by evidence which the trier of facts chose to believe, determination of the credibility of the witnesses being his function, not ours. Additionally, we must note that the complaint that Glasser did not understand the agreement to provide for the payment of commissions after plaintiff's employment was terminated is not borne out by the evidence.

■■ Defendant further contends that in spite of the fact that it was established that Glasser had authority to employ plaintiff he did not, as a matter of law, have authority to enter into a contract which provided for reorder commissions after termination. The nub of this contention is whether or not such a contract is in fact unusual or extraordinary. The trial court found that it was not. Defendant's own evidence established that Glasser had authority to do "whatever was necessary" to get into the new market. Ett, an independent witness, testified that he had the same arrangement with defendant. Further, there is nothing inherently unusual or extraordinary in a contract such as this, especially in light of the fact that all selling costs fell upon plaintiff.

Defendant next contends that the court erred in awarding commissions to plaintiff for the period after his termination because plaintiff failed to

prove that he was the procuring cause of such sales and also failed to prove any effort on his part to mitigate damages. We fail to see how either theory is applicable to this case. If the agreement is established, as it was above, it provided for a certain form of compensation on reorders, based on the premise that they continued to flow from the original procuring cause. Also there is no duty on plaintiff's part to mitigate damages. He had fully performed the contract on his part and by so doing was entitled to full performance in return. This situation is distinguishable from the wrongful termination of employment cases cited by defendant wherein the duty to mitigate arises on the part of the employee. Likewise, the court did not err in excluding evidence relating to defendant's payment of commissions to others for sales which the court held to be commissionable to plaintiff. As stated above, once the terms of the contract were established, as they were here, defendant was obligated to pay plaintiff in accordance with those terms irrespective of any arrangements it may have made with other salesmen.

■■ Defendant next contends that the contract is violative of the Statute of Frauds.[2] Specifically he contends that since the commissions could be forthcoming forever or at least for three years, the contract is unenforceable because it was not reduced to writing. However, if it appears from a reasonable interpretation of the terms of the agreement that it is capable of performance within a year, the statute does not apply. (See *Hall v. Gruesen* (1959), 22 Ill.App.2d 465, 470, 161 N.E.2d, 345, 347.) A discussion of the application of this principle may be found in *Balstad v. Solem Machine Co.* (1960), 26 Ill.App.2d 419, 422-425, 168 N.E.2d 732, 734-735. There the court pointed out that this portion of the statute has been interpreted to render a contract unenforceable only if it is impossible of performance within one year. This reasoning removes the agreement in the instant case from the operation of the statute. Although the agreement called for the payment of commissions as long as the customer reordered the same style number of fabric and those reorders could come in forever, it is just as possible that the reorders could cease before the expiration of one year. Also plaintiff could have died before one year had passed from the time the agreement was made thus obviating the payment of reorder commissions. The fact that performance went on for more than one year is unavailing to defendant because it was long ago stated in *Mutual Life Insurance Co. of N.Y. v. Ritsher* (1915), 196 Ill.App. 27, 31:

> "[T]he test to determine whether such agreement comes within the statute is not whether it was performed within a year, but

---

[2] Ill. Rev. Stat. 1965, ch. 59, par. 1.

whether, when the agreement was made, it could have been performed within a year; and if so, it does not come within the statute."

Thus, we hold that the Statute of Frauds has no application to the case at bar.

Defendant also contends that the court improperly excluded evidence which was crucial to the determination of the central issues of this case. By means of an offer of proof made by defendant, Glasser testified that defendant only obligated itself to pay commissions on reorders made during the time plaintiff was in defendant's employ. Glasser further testified that he had no authority to enter into a contract with plaintiff for payment of reorder commissions after severance of the employee-employer relationship. This latter testimony was stricken on plaintiff's motion.

■■ Assuming arguendo that the testimony was improperly excluded, any error in that regard would not require reversal. In spite of the fact that this evidence bore directly upon two of the central and contested issues in this case, it consisted of "self-serving" statements offered by an interested witness. More importantly, the trial judge found this very witness to be "evasive" and "devious" and his testimony "wholly unconvincing." Because this testimony would have had no probative value to the trial court, the exclusion of the testimony could not be prejudicial error. See generally, *Baker v. Baker* (1952), 412 Ill. 511, 518, 107 N.E.2d 711, 714.

Lastly, defendant urges that the court found plaintiff's employment was wrongfully terminated and that this finding, erroneous and irrelevant as it was, became intertwined with the remainder of the court's decision to defendant's prejudice. A reading of the trial judge's lengthy judgment and decree indicates that he had a thorough command of all factual and legal issues of this case and decided the matter solely on those grounds. We fail to see any prejudice to defendant in this regard.

The judgment is affirmed.

Affirmed.

DRUCKER and ENGLISH, JJ., concur.