**DAHLY TOOL COMPANY, Plaintiff-Appellant,**

v.

**VERMONT TAP AND DIE COMPANY, A DIVISION OF VERMONT AMERICAN CORPORATION, Defendant-Appellee.**

**No. 83–1175.**

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 1, 1984.*

Decided March 2, 1984.**

---

\* The appellee has filed a statement asking this Court to affirm the order entered below without oral argument. The Court notified the appellant that it might file a "Statement as to Need for Oral Argument." *See* F.R.A.P. 34(a); Circuit Rule 14(f). Having considered the appellant's statement, the Court has nevertheless concluded that oral argument is unnecessary, and the appeal has consequently been submitted for decision on the briefs and record.

\*\* This case was originally decided March 2, 1984 in an unpublished order. Pursuant to our order of May 18, 1984, we now publish the opinion.

John W. Damisch and Thomas J. Swabowski, Barclay, Damisch & Sinson, Ltd., Chicago, Ill., for plaintiff-appellant.

Jonathan B. Gilbert, Pedersen & Houpt, Chicago, Ill., Martin Roach, Hamilton, Roach & Diamond, Louisville, Ky., for defendant-appellee.

Before PELL, WOOD and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

In this diversity action, the appellant, a former manufacturer's representative of the appellee, appeals the district court's order, 561 F.Supp. 600, holding that the appellant was not entitled to commissions for orders placed with the appellee prior to the appellant's termination but filled afterwards, or for commissions on orders placed pursuant to "blanket orders" entered into prior to or shortly following the appellant's termination. Because we agree with the district court that the appellant failed to allege any orders for which he was the procuring cause and because neither the contract between the parties nor industry custom provides for the payment of commissions under these circumstances, we affirm.

### I.

The parties entered into an oral agreement in 1951 which provided that the appellant [1] would be a manufacturer's representative for the appellee for an indefinite period; at one point during the life of the agreement the appellant represented the appellee throughout much of the upper Midwest. The parties agree that the appellant's basic responsibility was to create a demand for the appellee's products by encouraging potential end users to test and subsequently purchase the products and by providing technical assistance after the sale occurred; the actual sales, however, were handled by one of the appellee's numerous distributors. The agreement fur-

---

1. The original agreement was between Norman Dahly as a sole proprietor and the appellee. Dahly Tool was incorporated in 1967 and took over operation as the appellee's representative; the appellee apparently acquiesced to the incorporation of Dahly Tool.

ther provided that the appellant would receive as a commission a percentage of the price on all sales occurring in the appellant's territory, regardless of whether the appellant was involved in the sale.

In October, 1979, the appellant was informed by the appellee that the appellant was to be terminated effective December 31, 1979; the appellee told the appellant that commissions would be paid on all orders shipped prior to that date.

The appellant subsequently brought an action in Illinois state court for an accounting of all orders placed prior to its termination but filled afterwards and for all orders placed under "blanket orders" negotiated in 1979 or early 1980. A blanket order is an agreement between a distributor and an end user of the appellee's products which provides that the distributor will supply the user at an agreed price for a period of usually one year; shipments are authorized by the issuance of a release rather than a purchase order. At trial a representative of one end user testified that users were not obligated to buy any particular number of the appellee's products; the representative also testified that buyers did not feel "locked in" by such blanket orders.

The appellee then removed this action to the district court. After trial, the district court found that the contract between the parties was terminable at will and that the contract made no provision concerning the payment of commissions upon termination. The district court held that the appellant was not entitled to commissions either on orders placed prior to his termination but shipped thereafter or to commissions on orders placed pursuant to blanket orders negotiated in 1979 or early 1980. The court concluded that the appellant had failed to allege any order of which the appellant was the procuring cause, and also concluded that industry custom, which under Illinois law can be used to supplement a contract not contrary to such custom, did not provide for payment of commissions under these circumstances. The appellant filed a timely notice of appeal to this Court.

## II.

The only issue on appeal is whether the district court erred in holding that the appellant was not entitled to commissions on orders received prior to December 31, 1979, but not shipped until after that date, or to commissions on orders placed under blanket orders negotiated in 1979 or early 1980. The appellant offers two theories which it argues entitles it to those commissions. The first theory is that the appellant was the "procuring cause" of the orders and is consequently entitled to the commissions; the second theory is that industry custom provides for the payment of such commissions.

An agent who is the procuring cause of a transaction which he is authorized to negotiate is entitled to the commission for the transaction, regardless of the fact that he was discharged prior to completion of the deal. *Graubremse GMBH v. Berg Manufacturing & Sales Co.*, 417 F.2d 1201, 1205 (7th Cir.1969). In another case interpreting Illinois law, this Court held that the plaintiff, a manufacturer's representative under an oral agreement which provided that the plaintiff would attempt to induce mail order companies to insert descriptions and photographs of the defendant's furniture in the mail order companies' catalogues, was the procuring cause of sales resulting from those catalogue listings and was consequently entitled to commissions on those sales, notwithstanding the fact that the sales were made or consummated subsequent to the termination of the plaintiff's services. *Richer v. Khoury Bros., Inc.*, 341 F.2d 34, 38 (7th Cir.1965). *See Stein v. Malden Mills, Inc.*, 9 Ill. App.3d 266, 292 N.E.2d 52 (1972); *Larson v. R.W. Borrowdale Co.*, 53 Ill.App.2d 104, 203 N.E.2d 77 (1964); *Heuvelman v. Triplett Electrical Instrument Co.*, 23 Ill. App.2d 231, 161 N.E.2d 875 (1959).

The appellant alleges that the procuring cause doctrine entitles it to commissions on all orders placed before its termination but filled afterwards and commissions on all orders placed pursuant to blan-

**314**

ket orders negotiated in 1979 or early 1980. As the district court noted, however, the appellant fails to allege the existence of any order which he in fact procured and for which he received no commission. The appellant's claim that he is owed commissions is not based on an allegation that he in fact procured orders and was not paid; his claim is based solely on his oral agreement with the appellee. Because the appellant did not allege any order which he actually procured, he is not entitled to commissions based on an extra-contractual remedy like the procuring cause doctrine. We next examine whether the appellant is entitled to commissions pursuant to his agreement with the appellee.

■■■ The district court found that the oral agreement between the parties made no provision for payment of commissions upon termination. This finding is not challenged on appeal. The district court also noted that industry custom may allow additional terms to be read into a contract where that contract is not a complete expression of the intention of the parties. 15 Illinois Law and Practice: Customs and Usages § 9 (1968). To be binding, however, a trade custom or usage must be so well known, uniform, long-established, and generally acquiesced in so as to induce the belief that the parties contracted with reference to it, nothing in their contract to the contrary. *Katz v. Brooks*, 65 Ill.App.2d 155, 212 N.E.2d 508, 511 (1965). In this case the evidence of trade custom included the testimony of appellee's president and ·evidence of three other contract terminations involving the appellant. The district court found that the trade custom was to give as little as thirty days notice and that no custom provided that blanket orders would continue to generate commissions for an indefinite period of time after the agent's termination. We hold that this finding is not clearly erroneous. *Medtronic, Inc. v. Benda*, 689 F.2d 645, 647 (7th Cir.1982), *cert. denied*, 459 U.S. 1106, 103 S.Ct. 731, 74 L.Ed.2d 436 (1983).

In his brief the appellant argues that it is the appellee's burden to plead and prove the existence of a trade custom which would deny the appellant its claimed commissions. The appellant's view of this burden is incorrect. The appellant must establish its right to the disputed commissions either on the basis of its contract with the appellee or on the basis of an extra-contractual remedy like the procuring cause doctrine. *Cf. Sandberg v. American Machining Co.*, 31 Ill.App.3d 449, 334 N.E.2d 246, 248 (1975). The appellant has failed to establish its right to the commissions under either theory and we therefore affirm the order of the district court.