GREER PROPERTIES, INC., Plaintiff,

v.

La SALLE NATIONAL BANK, as Trustee u/t/a No. 107486 and Old Orchard West Venture, Defendants.

La SALLE NATIONAL BANK, as Trustee u/t/a No. 107486 and Old Orchard West Venture, Counter–Plaintiffs,

v.

MARRIOTT CORPORATION, and Greer Properties, Inc., Counter–Defendants.

No. 87 C 10983.

United States District Court,
N.D. Illinois, E.D.

June 20, 1988.

Robert J. Trizna, Daniel J. Fumagalli, Trizna & Lepri, Chicago, Ill., for plaintiff.

Louis R. Hegeman, Jay D. Stein, Gould & Ratner, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Defendants LaSalle National Bank ("LaSalle") and Old Orchard West Venture ("Old Orchard") move for summary judgment on their counterclaim. The motion is granted and judgment is entered for LaSalle and Old Orchard against counter-defendants Marriott Corporation ("Marriott") and its wholly-owned subsidiary, Greer Properties, Inc. ("Greer").[1] The court's findings of fact and conclusions of law are set forth below.

## NATURE OF THE DISPUTE

The controversy in this case arises over interpretation of a contract dated July 31, 1987. Old Orchard agreed to sell, and Marriott agreed to purchase, an undeveloped parcel of real estate in Skokie, Illinois, for $1,250,000. When the parties entered into the contract, they were aware that the soil contained contaminants, but they did not know the extent of the problem or the cost of cleaning up the site. The parties agreed

---

1. Although Marriott personnel negotiated the contract in issue, Greer (not its parent, Marriott) actually signed the contract. The princi-pals in the transaction were Marriott, as the buyer, and Old Orchard, as the seller.

that it would be Old Orchard's responsibility to clean up the property before the transaction closed.

Paragraph XX of the contract provided that Old Orchard would have a study completed to determine the existing soil condition. Completion of the soil study was expected by August 10, 1987. Old Orchard agreed to submit copies of the soil study to Marriott and to the Illinois Environmental Protection Agency ("Illinois EPA"). Old Orchard further agreed to take all action recommended by the soil study and the Illinois EPA to bring the property in compliance with local, state and federal regulations, ordinances and laws before the closing. At the heart of the dispute is the following provision of Paragraph XX:

> ... if the cost of such clean-up work will, in Seller's best business judgment, be economically impracticable, then Seller, at its option, may terminate this Contract by providing written notice to Purchaser ... no later than six (6) weeks plus five (5) business days following completion of the Soils Study. Complaint, Exhibit 2, p. 9.

An environmental clean-up plan was approved by the Illinois EPA in a letter dated September 29, 1987 to the soil consultant retained by Old Orchard. On October 7, 1987, Old Orchard received the soil consultant's cost estimate for clean-up of the site. The estimate set forth a "worst-case" estimate of $240,000, a "best-case" estimate of $190,000 and a "probable" estimate of $218,000.

On October 8, 1987, Old Orchard gave timely notice to Marriott that:

> ... we have decided to terminate the contract due to the projected cost of the "clean-up work," being, in our best business judgment, economically impractical. Complaint, Exhibit 3.

2. Searle had earlier contracted to purchase the same property for approximately $1,100,000. However, Searle exercised its right to terminate the contract on April 20, 1987. Searle's soil consultant discovered that the property contained environmental wastes. Old Orchard would not agree to reduce the purchase price by the cost of the clean-up.

On October 9, 1987, Old Orchard offered to close the transaction if Marriott would pay an additional $250,000. Marriott did not accept. During this period, Old Orchard engaged in ongoing negotiations to sell the property to G.D. Searle Co. ("Searle").[2]

Marriott claims that by refusing to close the transaction as originally negotiated, Old Orchard breached the contract and acted in bad faith "solely for the purpose of entering into a contract with G.D. Searle & Co. for a higher purchase price." Answer to Counterclaim, p. 6, ¶ 3. Marriott seeks specific enforcement of the contract[3] and an order enjoining Old Orchard from conveying legal title or any interest in the property to anyone other than Marriott, as well as compensatory and punitive damages.

In the counterclaim, Old Orchard seeks a determination that it acted in accordance with the contract by electing to terminate when it determined that the cost of environmental clean-up would render the contract economically impracticable. Old Orchard asserts that the termination was effective and that the contract is no longer in effect.

The recording of a *lis pendens* in this case has precluded Old Orchard from selling the property to any other prospective purchaser. Old Orchard has requested the court to expedite consideration of their summary judgment motion because they continue to incur monthly expenses exceeding $11,000 in connection with the ownership of the property.

## SUMMARY JUDGMENT IS APPROPRIATE

The court has diversity jurisdiction over this matter. 28 U.S.C. § 1332.[4] The mo-

3. It is undisputed that the property has been cleaned up at an actual cost of $251,825, including consultants' fees, waste removal and backfill.

4. It is undisputed that counter-plaintiff LaSalle is a national bank and counter-plaintiff Old Orchard is an Illinois general partnership; each has its principal place of business in Illinois. Counter-defendants Marriott and Greer are De-

tion for summary judgment should be granted if the pleadings, affidavits and discovery matter on file show that there is no genuine issue as to any material fact and that Old Orchard is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). It must be determined whether there are any genuine issues for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). No issue for trial exists absent a showing of sufficient evidence favoring Marriott for a jury to return a verdict in its favor. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968).

After reviewing the pleadings, affidavits and discovery materials submitted by the parties, the court concludes that there is no genuine issue of material fact and that Old Orchard is entitled to judgment as a matter of law.

A. *THE OPTION TO TERMINATE THE CONTRACT WAS EFFECTIVELY EXERCISED*

■ In clear and unambiguous language, Paragraph XX of the contract granted Old Orchard the right to terminate the sale if, *in its own best business judgment,* the cost of cleaning up the property rendered its performance "economically impracticable." The option to terminate gave Old Orchard broad discretion in deciding whether the terms of the sale would be financially acceptable after its soil consultant determined the probable costs of the Illinois EPA-approved plan.[5] This arrangement was reasonable, given the open-ended nature of the potential clean-up costs Old Orchard agreed to assume.[6] The contract, drafted by Marriott attorneys during negotiations with Old Orchard representatives, clearly contemplated that there was a point at which clean-up costs would render the contract financially impractical. The exclusive right to make that determination was

given to Old Orchard in unambiguous terms.

The court finds from the undisputed facts that Old Orchard timely exercised its option to terminate the contract when it determined that probable clean-up costs substantially exceeded its expectations. Old Orchard received the soil consultant's cost estimate on October 7, 1987; on October 8, 1987, Old Orchard notified Marriott of its decision to terminate the contract. The basis for Old Orchard's decision was explained as follows by its principal negotiator:

> So that when all is said and done, we were somewhere at $250,000–plus to clean-up this land, when we thought it was going to cost us 60 to a hundred thousand dollars.... That's why we made the judgment we did. *Hoag Tr.* at 213–14.

Marriott challenges the conclusion that Old Orchard exercised its best business judgment because, in Marriott's view, the contract was not economically impracticable. Marriott does not dispute the clean-up costs that Old Orchard claims were involved. Rather, Marriott contends that $75,000 in consultant's fees should not be included in calculating the costs. Under Marriott's restrictive definition of clean-up costs, Old Orchard's probable costs would have been $158,000 to $165,000, not $250,000. Opposition Brief at 18.

Marriott's position ignores the explicit contractual provision that bestows upon Old Orchard the sole right to determine if clean-up costs render the sale financially impractical, whether that probable cost was $165,000 or $250,000. Marriott does not consider the fact that the same provision obligates Old Orchard to take all action recommended by the Illinois EPA and its consultant to bring the soil in compliance with all applicable laws. This provision cannot reasonably be interpreted to cover

laware corporations with principal places of business outside Illinois.

5. The contract similarly granted Marriott broad discretion to terminate the sale if it failed to secure necessary zoning changes for a hotel, or if it failed to secure all permits that Marriott in

its "sole opinion" deemed necessary. Complaint, p. 5, ¶ XIV(A) and (B).

6. Clean-up estimates ranged from $60,000 to $600,000 prior to completion of the Illinois EPA-approved plan developed by Old Orchard's soil consultant. Opposition Brief at 14.

only the cost of physically digging up contaminated dirt and replacing it with clean soil, as Marriott suggests. Moreover, Old Orchard's principal negotiator testified that his pre-study estimate of $60,000 to $100,000 *included* the soil consultant's anticipated fees. *Hoag Tr.* at 141. Thus, even under Marriott's narrow interpretation of the clean-up cost provision, the Illinois EPA-approved clean-up costs would have exceeded Old Orchard's earlier unsubstantiated estimate by at least $100,000. This increase more than doubled Old Orchard's original estimate and provides a sufficient basis for Old Orchard's decision to terminate the sale given the broad discretion that was contractually authorized.

Marriott also challenges Old Orchard's termination by attempting to equate the economically impracticable provision with the doctrine of commercial impracticability. Marriott describes Section 266(1) of the Restatement (Second) of Contracts as "closely akin to this case." Opposition Brief at 10. That section provides:

> [W]here, at the time a contract is made, a party's performance under it is impracticable without his fault *because of a fact of which he has no reason to know and the non-existence of which is a basic assumption on which the contract is made,* no duty to render that performance arises, unless the language or circumstances indicate the contrary. *Id.* [emphasis supplied].

This circuit, applying Illinois law, has also placed heavy emphasis on the unforeseeability of the condition that renders contractual performance commercially impracticable. *See Waldinger Corporation v. CRS Group Engineers, Inc.,* 775 F.2d 781, 786 (7th Cir.1985) (performance is excused if "... the circumstances causing the breach ... are so vitally different from what was anticipated that the contract cannot be reasonably thought to govern"). Based on these standards, Marriott argues that since environmental clean-up costs were foreseeable, Old Orchard cannot meet the stringent commercial impracticability standards.

Marriott's position is untenable in law and logic. Environmental clean-up costs were expressly contemplated by the contract. Old Orchard was given the express option to terminate the sale if those costs proved to be excessive in Old Orchard's judgment. The situation giving rise to termination was a foreseen possibility that was explicitly addressed in Paragraph XX. In short, the doctrine of commercial impracticability has no bearing on these issues. It is Paragraph XX that defines the standards for determining whether Old Orchard had the right to terminate the sale.

Based upon the foregoing considerations, the court concludes that Old Orchard properly and effectively terminated its contract with Marriott.

## B. *THERE IS NO GENUINE ISSUE OF FACT REGARDING OLD ORCHARD'S GOOD FAITH*

■ Marriott contends that, in refusing to close the sale, Old Orchard acted in bad faith for the sole purpose of selling the property to Searle at a higher price. Opposition Brief at 16. The only evidence Marriott relies on is the undisputed fact that the day before Old Orchard gave Marriott notice of termination, Searle offered to purchase the property for $1,455,000. *Id.*[7] However, the uncontroverted facts also establish that Old Orchard decided to terminate its contract with Marriott *before* approaching Searle to reopen negotiations for the property. *Hoag Tr.* at 204; *Scherb Tr.* at 92–94. The day after Old Orchard gave notice of termination, it offered to close the transaction with Marriott for an additional $250,000, an amount virtually equal to the actual clean-up costs. Although Marriott never responded to the offer, its principal negotiator believed Marriott could have obtained the property by increasing the purchase price by only $100,000. *Parker Tr.* at 121.

Viewed in light of the substantial cost of the Illinois EPA-approved clean-up plan, and its contractual termination option, Old

---

7. Old Orchard did not contract to sell the property to Searle during the almost three-month period between termination of the Marriott contract and the filing of this action.

Orchard's attempt to secure a purchase price that would absorb the clean-up costs cannot be the basis for concluding that Old Orchard exercised its discretion unreasonably or in bad faith. *Rao v. Rao,* 718 F.2d 219, 222–23 (7th Cir.1983); *Dahly Tool Company v. Vermont Tap and Die Company,* 561 F.Supp. 600, 601 (N.D.Ill.1982), *affirmed,* 742 F.2d 311 (7th Cir.1984).

## CONCLUSION

The motion of LaSalle and Old Orchard for summary judgment on their counterclaim is granted. The cause is dismissed with prejudice and without costs.