25 F.3d 1053
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 SPRAYING SYSTEMS CO., an Illinois corporation, Plaintiff-Appellee,
v.
WILLIAM F. SMART CO., INC., Defendant-Appellant.
 No. 93-2711.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 14, 1994.
Decided May 17, 1994.
 
 Before BAUER, COFFEY, and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 The plaintiff, Spraying Systems Co. ("Spraying Systems"), brought a declaratory judgment action in Illinois state court against the defendant, William F. Smart Co., Inc. ("Smart"), in order to resolve a dispute concerning commissions on post-termination sales. Smart, a former sales representative of Spraying Systems, claimed it was entitled to such commissions. Following removal to federal court on diversity grounds, the case was submitted to a jury, which found in favor of Spraying Systems. Smart now appeals on the basis of a jury instruction that it proposed but that the district court never gave. For the reasons that follow, we affirm.
 
 
 2
 * BACKGROUND
 
 
 3
 Spraying Systems manufactures spray nozzles and, pursuant to a 1967 oral agreement, had employed Smart as a sales representative. In January 1989, this relationship ended when Spraying Systems terminated Smart. Both parties agree that the 1967 agreement was terminable at will. However, Smart believes that Spraying Systems had agreed in the 1967 oral agreement to pay Smart commissions not only for Smart's customers' initial orders, but also for all of Smart's customers' subsequent reorders, including reorders placed after its termination. Thus, although Smart concedes that the parties never discussed termination or its effects in their 1967 agreement, it maintains that it was entitled to post-termination commissions.
 
 
 4
 As a result of Smart's contentions, Spraying Systems brought a declaratory judgment action in Illinois state court. It sought a declaration that it did not have to pay Smart commissions on products sold after Smart's January 1989 termination. Smart removed the action to federal court, and the case proceeded to trial in May 1993. Both sides presented evidence on the issue of whether Smart was entitled to post-termination commissions.[1] At the May 21, 1993 jury instruction conference, both sides tendered their proposed jury instructions, which they submitted were based on the applicable Illinois law. Smart proposed the following jury instruction:
 
 
 5
 In the absence of an express cut-off limitation compensation on a commission basis dependent on future sales includes commissions on such sales occurring subsequent to termination of the salesman's or representative's contract.
 
 
 6
 R.102. Spraying Systems proposed an instruction that similarly directed the jury to find in its favor if the jury found that the parties did not expressly address post-termination commission in their oral agreement. The district court rejected both Smart's and Spraying Systems' instructions. Instead, it instructed the jury as follows:
 
 
 7
 A manufacturer is liable to pay commissions to a terminated manufacturer's representative on sales made after the termination only if the manufacturer has expressly agreed to pay commissions on the sales on which the manufacturer's representative bases his current claim.
 
 
 8
 In this case Spraying Systems denies that it entered into such an agreement, while William G. Smart Company, Inc. claims that Spraying Systems did so in the oral agreement entered into ... that established the manufacturer's representative relationship. On that question the burden is on Spraying Systems to prove by a preponderance of the evidence that it did not so agree.
 
 
 9
 Tr. 657. Spraying Systems and Smart accepted the court's instruction at the jury instruction conference; indeed, Smart had a hand in drafting the instruction. Despite its failure to object to the instruction the court did give, Smart now submits that the district court erred in not giving Smart's own proposed jury instruction.
 
 II
 ANALYSIS
 
 10
 At the outset, we note that Smart has arguably waived its right to appeal on the basis of jury instructions because it approved the instruction the district court gave. See Fed.R.Civ.Pro. 51 ("No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."); Bogan v. Stroud, 958 F.2d 180, 184 (7th Cir.1992) ("We express no opinion as to the appropriateness of the instructions; the defendants' failure to object precludes us from passing judgment on their substantive merit."). The district court's instruction covered the same subject matter and the same law as Smart's proposed instruction. Smart's attorney, who aided in the wording of the court's instruction, referred to that instruction and stated, "I think I can live with that." Jury Instr.Conf.Tr. 23. Nevertheless, Smart now submits that the court's instruction "only went one-half the way to telling the jury the law," Appellant's Reply Br. at 13, as the court's instruction did not address "the effect to be given the undisputed fact that there was no express agreement regarding a cut-off on commissions in the event of a termination," id. at 12. Moreover, Smart points out that, at the time Smart approved of the court's instruction, the court had not yet rejected Smart's proposed instruction. We shall therefore address Smart's argument that the district court erred in not giving Smart's proposed instruction.
 
 
 11
 In order to demonstrate that the district court committed reversible error in not giving its proposed jury instruction, Smart must demonstrate that its "instruction is a correct statement of the law." United States v. Motley, 940 F.2d 1079, 1081 (7th Cir.1991). Further, Smart must show that the district court's failure to give his instruction caused prejudice. See Littlefield v. McGuffey, 954 F.2d 1337, 1344 (7th Cir.1992) (stating that "reversal is mandated only 'if the jury's comprehension of the issues is so misguided that a litigant is prejudiced' ") (quoting Goldman v. Fadell, 844 F.2d 1297, 1302 (7th Cir.1988)). We have always stressed that "our review of jury instructions is limited," Doe v. Burnham, 6 F.3d 476, 479 (7th Cir.1993), and that we seek " 'only to determine if the instructions as a whole were sufficient to inform the jury correctly of the applicable law.' " Mayall v. Peabody Coal Co., 7 F.3d 570 (7th Cir.1993) (quoting Patel v. Gayes, 984 F.2d 214, 219 (7th Cir.1993)).
 
 
 12
 Smart offers several cases to support the proposition in its proposed jury instruction that the absence of an express limitation on commission payments requires a manufacturer to pay its sales representative commissions on reorder sales made after the sales representative's termination. Smart relies heavily on Stein v. Malden Mills, Inc., 292 N.E.2d 52 (Ill.App.1972). In Stein, a sales representative and a manufacturer had entered into an oral agreement that did not set forth what effect, if any, termination would have on commissions. Id. at 55. Therefore, upon termination, the sales representative brought an action seeking to recover commissions on reorder sales the manufacturer had made after terminating the sales representative. The trial court, finding that the oral agreement provided for commissions on reorders even after termination, held in the sales representative's favor. Id. at 56. The appellate court affirmed; it held that the trial court's finding of an agreement was not "against the manifest weight of the evidence." Id. Smart reads the case as demonstrating that the absence of an express provision on termination "is not the death knell to [Smart's] claim," Appellant's Br. at 15, and Smart is correct. That is why Smart was able to submit its case to a jury. However, Stein only upheld the trial court's finding of an agreement on post-termination commission between the parties; Stein did not, as Smart incorrectly asserts, hold as a matter of law that the absence of a termination provision establishes a manufacturer's post-termination liability.
 
 
 13
 Smart also relies on Scheduling Corp. of America v. Massello, 503 N.E.2d 806 (Ill.App.1987), in which a former sales representative counter-claimed under the terms of his written contract for commissions on the post-employment reorders of his former clients. Scheduling Corp., Smart contends, demonstrates that, absent an express limiting provision, commissions that are dependent on future reorder sales extend as a matter of law beyond a sales representative's termination. Like Stein, however, Scheduling Corp. was merely a sufficiency of the evidence case. The trial court had found as a factual matter that the sales representative had fulfilled the provisions in the parties' written contract with respect to payment of post-termination commission. On the case's first appeal, in fact, the Illinois appellate court remanded the case for further findings of fact, a disposition plainly inconsistent with Smart's submission that the case was eventually decided as a matter of law. Scheduling Corp. of America v. Massello, 456 N.E.2d 298, 306 (Ill.App.1983) ("On remand, it will be necessary for Massello to come forward with evidence, as to each item of claimed commission, that the sales were made prior to his resignation or that his involvement with the post-resignation sales was such as to entitle him to commissions."). Following the trial court's entry of further findings of fact on remand, the appellate court affirmed the trial court's judgment entitling the sales representative to post-termination commissions--but only because that judgment was "supported by the substantial evidentiary findings of the [trial] court," not because the court held that the sales representative was entitled to the commissions as a matter of law. Scheduling Corp. II, 530 N.E.2d at 811.
 
 
 14
 Finally, Smart offers Richter v. Khoury, 341 F.2d 34 (7th Cir.1965), from which Smart obtained the language for its proposed jury instruction. Again, however, Smart attempts to twist a case allowing for recovery in the absence of an express agreement on the effects of termination into a case mandating a directed verdict under such circumstances. In Richter, the district court, following a bench trial, entered judgment for a former furniture manufacturer's sales representative whose job it was to induce mail order companies to include the manufacturer's products into their catalogs. Smart quotes the language of Richter at length:
 
 
 15
 Plaintiff as the procuring cause of the sales, under the agreement of the parties as found by the District Court on the basis of substantial evidentiary support, is entitled to commissions notwithstanding the fact that the sales were made or consummated subsequent to the termination of the plaintiff's services. And, in view of the nature of the subject matter here involved--the procuring or continuation of catalogue listings to produce furniture sales during the period the catalogue is to serve and be current--makes it entirely reasonable that in the absence of an express cut-off limitation compensation on a commission basis dependent on such future sales include commissions on such sales occurring subsequent to termination of the saleman's or representative's contract.
 
 
 16
 Id. at 38 (emphasis added). The language of Smart's proposed jury instruction tracks almost verbatim the emphasized language. It is readily apparent from the context, however, that the case merely affirms the judgment and factual findings of the district court and, moreover, expressly limits the affirmance to the facts in the case. Richter in no way announces that, in "the absence of an express cut-off limitation" on commissions dependent on future sales, a court should instruct a jury to find in favor of the sales representative. Id.
 
 
 17
 Thus, Smart has failed to demonstrate that its proposed instruction was in accordance with Illinois law, much less that the district court committed reversible error in not giving the instruction. This is made clear in a case Smart failed to acknowledge in its opening brief, Sandberg v. American Machining Co., 334 N.E.2d 246 (Ill.App.1975). In Sandberg, a manufacturer and its sales representative had an agreement much like the one between Smart and Spraying Systems. It was not in writing and did not cover termination and its possible effects. Id. at 247. After the manufacturer terminated the representative, the representative brought an action to recover commissions on sales the manufacturer made to the representative's customers after the representative's termination. The trial court dismissed the complaint for failing to plead an express agreement concerning commissions on post-termination sales. The appellate court affirmed, stating that there existed "clear authority" that relief could not be granted "because the plaintiff did not plead an express agreement covering subsequent sales." Id. at 248. Smart tries to distinguish Sandberg from its case by asserting that Smart did in fact contend "that there was an express agreement regarding the extent of compensation." Reply Br. at 17. Smart is correct, and that is why its complaint was not dismissed; but the point remains that, because an allegation of express agreement is required, Smart's proposed jury instruction did not reflect the law of Illinois.
 
 
 18
 The short of the matter is that, under Illinois law, some kind of express agreement on post-termination commissions had to be found by the jury in order for the jury to find in favor of Smart; the district court's instruction accurately focused the jury on that issue. In fact, the court carefully heeded an objection by Smart's attorney to a draft of the court's instructions. Originally, the court's instruction read:
 
 
 19
 A manufacturer is liable to pay commissions to a terminated manufacturer's representative on sales made after termination only if the manufacturer has expressly agreed to do so (emphasis added).
 
 
 20
 Smart claimed that such an instruction required the jury to find an express termination agreement (which both sides conceded did not exist), instead of merely an agreement that the commissions in dispute would be paid. The district court agreed with Smart and made the proposed change, but maintained (with no further objection from Smart) that the jury still had to find an express agreement on the post-termination commissions to which Smart claimed it was entitled. See Jury Instr.Conf.Tr. 19-23. The court's final instruction, with the change, read:
 
 
 21
 A manufacturer is liable to pay commissions to a terminated manufacturer's representative on sales made after termination only if the manufacturer has expressly agreed to pay commissions on the sales on which the manufacturer's representative bases his current claim (emphasis added).
 
 
 22
 Tr. 657. This instruction is the law of Illinois. Accordingly, no reversible error was committed.
 
 Conclusion
 
 23
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 Because the only issue on appeal is whether the district court committed reversible error in not giving the jury instruction Smart proposed, there is no need for a full recitation of the evidence each side presented. Suffice it to say that both sides offered the testimony of former Spraying Systems sales representatives who stated that they had not discussed termination or its effects on commission payments when they individually entered into oral agreements with Spraying Systems. However, Spraying Systems attempted to demonstrate in its presentation that the sales representatives understood that their agreement with Spraying Systems required them to secure orders and reorders, and that commissions would not be paid when the sales representative no longer secured such reorders. Smart, on the other hand, tried to show that former Spraying Systems sales representatives such as Smart understood their oral agreement to include commissions on the reorders of customers the sales representatives originally had secured, and that nothing in the agreement covered termination or its effects on such reorders