UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

VANTAGE MARKETING, INCORPORATED,
*Plaintiff-Appellant,*

v.

DE AMERTEK CORPORATION,
INCORPORATED,
*Defendant-Appellee.*

No. 01-1366

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CA-98-210-3-MU)

Argued: January 24, 2002

Decided: March 14, 2002

Before WILLIAMS and TRAXLER, Circuit Judges, and
Cynthia H. HALL, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Stephen Montgomery Cox, ROBINSON, BRADSHAW
& HINSON, P.A., Charlotte, North Carolina, for Appellant. Irving
Michael Brenner, SMITH, HELMS, MULLISS & MOORE, L.L.P.,
Charlotte, North Carolina, for Appellee. **ON BRIEF:** R. Steven

DeGeorge, ROBINSON, BRADSHAW & HINSON, P.A., Charlotte, North Carolina, for Appellant. Phillip Shawn Wood, D'ANCONA & PFLAUM, L.L.C., Chicago, Illinois, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Vantage Marketing, Inc. appeals from the district court's grant of summary judgment in favor of De Amertek Corporation, Inc. on Vantage's claims for failure to pay post-termination commissions, common law fraud, and unfair and deceptive trade practices. Finding no reversible error, we affirm.

I.

De Amertek is an Illinois corporation engaged in the design, manufacture, and sale of custom electronics and microelectronics.[1] Vantage is an independent electronics sales representative agency that represents numerous manufacturers. On March 9, 1994, Roland Lautenbach, Vantage's founder, CEO, and principal shareholder, traveled to Illinois to meet with Jack Chen, De Amertek's founder, CEO, and principal shareholder, to discuss the possibility of Vantage becoming a sales representative for De Amertek in the Southeast. The parties agree that at this meeting, they entered into an oral contract whereby De Amertek agreed to make Vantage the exclusive representative for De Amertek in the Carolinas, Tennessee, and Eastern Georgia. The parties dispute, however, the remaining terms of the contract. Vantage claims that the contract originally provided that once Vantage pro-

---

[1]Because this is an appeal from an entry of summary judgment in favor of De Amertek, we review the facts in the light most favorable to Vantage.

cured a customer for De Amertek, it would receive a 6% commission on all purchases for as long as the customer bought products from De Amertek. De Amertek agrees that the contract provided that Vantage would receive a 6% commission on all of its sales,[2] but it disputes the existence of a perpetual commissions provision.

After assuming responsibilities as De Amertek's sales representative, Vantage began to sell electronic display and control boards produced by De Amertek to Dixie-Narco, Inc., a vending machine manufacturer in South Carolina. Soon after entering into this agreement, Dixie-Narco experienced failures in De Amertek's electronic display and control boards. Both De Amertek and Vantage allege that the other is at fault for Dixie-Narco's various grievances, which were eventually resolved. On October 8, 1997, De Amertek terminated Vantage as its sales representative. In the meantime, Dixie-Narco became one of De Amertek's largest customers.

On May 20, 1998, Vantage filed this action against De Amertek in the United States District Court for the Western District of North Carolina, seeking unpaid sales commissions and alleging breach of contract, fraud, slander per se, and unfair and deceptive trade practices. On November 30, 1999, Vantage amended its complaint to allege two additional quasi-contractual claims.

On July 18, 2000, De Amertek moved for summary judgment on all claims, which the district court granted on February 9, 2001 pursuant to a written order. On March 4, 2001, Vantage filed a timely notice of appeal to this court.

## II.

We review the grant of summary judgment de novo, using the same standards as applied by the district court. *Roe v. Doe*, 28 F.3d 404, 406 (4th Cir. 1994). Summary judgment is appropriate where there is no genuine dispute as to an issue of material fact, and the moving party is entitled to summary judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[2]This 6% commission was later reduced by oral agreement of the parties to 5%.

(1986). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must demonstrate that a triable issue of fact exists and may not rest upon mere allegations or denials. *Anderson*, 477 U.S. at 252. A mere scintilla of evidence supporting the case is insufficient. *Id.* All reasonable inferences drawn from the evidence must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Yet, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* at 587 (internal quotation marks omitted).

On appeal, Vantage challenges the district court's grant of summary judgment on its quasi-contractual "procuring cause" claim, its unfair and deceptive trade practices claim, and its fraud claim. We will discuss each in turn.

A.

Vantage asserts that De Amertek is liable to Vantage for post-termination commissions under the quasi-contractual "procuring cause" doctrine. In Illinois,[3] absent a written contract to the contrary, the doctrine of procuring cause "allows a salesperson to recover commissions on sales made after the termination of the agency relationship if the salesperson procured the sales through its activities prior to [the] termination of the agency relationship." *Solo Sales, Inc. v. North America OMCG, Inc.*, 702 N.E.2d 652, 653 (Ill. App. Ct. 1998) (internal quotation marks omitted). The doctrine is "designed to protect a salesperson who, although no longer an agent or employee when a sale is made, has done everything necessary to effect the sale." *Id.* at 653-54.

Vantage alleges that the procuring cause doctrine entitles it to perpetual commissions on all of De Amertek's sales of electronic display and control boards to Dixie-Narco.[4] As the district court held, how-

___

[3]The parties agree that Illinois law applies to Vantage's procuring cause claim. (Appellant's Br. at 16.)

[4]Before the district court, Vantage sought perpetual commissions on all sales to Dixie-Narco. At oral argument, Vantage acknowledged that it has changed its claim on appeal to one requesting commissions on all sales of the electronic display and control boards to Dixie-Narco.

ever, the procuring cause doctrine is based upon the procurement of particular sales, not the procurement of customers. *See, e.g.*, *Furth v. Inc. Publ'g Corp.*, 823 F.2d 1178, 1180-81 (7th Cir. 1987) (holding that procuring cause doctrine creates entitlement to procurement of particular sales, as opposed to procurement of customers); *Dahly Tool Co. v. Vermont Tap & Die Co.*, 742 F.2d 311, 314 (7th Cir. 1984) ("As the district court noted, however, the appellant fails to allege the existence of any order which he in fact procured and for which he received no commission.").

The Seventh Circuit's recent opinion in *Houben v. Telular Corp.*, 231 F.3d 1066 (7th Cir. 2000), does not require a different result. There, Houben claimed entitlement to post-termination commissions on a supply contract between Motorola and Telular whereby Motorola agreed to purchase $100 million in Telular products.[5] *Id.* at 1070. The supply contract was entered into prior to Houben's termination, but a purchase order was not issued until after her termination. *Id.* The Seventh Circuit held that these facts were sufficient to support a finding that Houben was entitled to post-termination commissions on the Motorola supply contract under the procuring cause doctrine. *Id.* at 1073. Unlike in *Houben*, Vantage has failed to point to an identifiable, discrete sale for which it is responsible. Because Vantage failed to identify any particular sale it procured, we agree with the district court that the procuring cause doctrine "is simply inapplicable to this case and cannot serve as a viable basis for recovery as a matter of law." (J.A. at 537.)

## B.

Vantage next asserts that De Amertek committed fraud in the inducement of the contract by promising that it would pay Vantage perpetual commissions on customers procured by Vantage when De Amertek had no intention of keeping this promise. In North Carolina,[6]

---

[5]For reasons not explained in the *Houben* opinion, "[t]he full $100 million in sales never materialized," but Telular shipped approximately $30 million in products to Motorola. *Houben v. Telular Corp.*, 231 F.3d 1066, 1070 (7th Cir. 2000).

[6]We agree with the district court that North Carolina law governs Vantage's fraud claim.

the essential elements of fraud are: "(1) [f]alse representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) which does in fact deceive; [and] (5) resulting in damage to the injured party." *Rowan County Bd. of Educ. v. United States Gypsum Co.*, 418 S.E.2d 648, 658 (N.C. 1992) (internal quotation marks omitted). "A promissory misrepresentation may constitute actionable fraud when it is made with intent to deceive the promisee, and the promisor, at the time of making it, has no intent to comply." *Leftwich v. Gaines*, 521 S.E.2d 717, 723 (N.C. Ct. App. 1999) (internal quotation marks omitted).

The alleged misrepresentation forming the basis of Vantage's fraud in the inducement claim also formed the basis of Vantage's breach of contract claim. In ruling on the breach of contract claim, the district court held that there was insufficient evidence that De Amertek agreed to pay Vantage commissions on post-termination sales to Dixie-Narco. (J.A. at 529, 534 ("[Vantage's] evidence that De Amertek agreed to pay [Vantage] commissions in perpetuity is simply insufficient to support a jury verdict in its favor on this issue.").) Vantage sought to establish the existence of the alleged representation through the deposition testimony of Lautenbach and Paul Adkison, a Vantage sales representative who was present at a meeting between Lautenbach and Chen, and an affidavit submitted by Lautenbach. Portions of Lautenbach's deposition testimony characterized the commission arrangement as being based upon obtaining customers, whereas other portions of his deposition testimony characterized the arrangement as being based upon sales. Lautenbach further testified that there was no discussion "whatsoever" about what would happen upon the termination of Vantage's relationship with De Amertek. (J.A. at 530.) Similarly, Adkison offered contradictory assertions regarding the terms of the agreement, vacillating between describing the agreement as sales-based and as customer-based. "[A] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *S.P. v. City of Tacoma Park*, 134 F.3d 260, 274 n.12 (4th Cir. 1998) (internal quotation marks and citations omitted). For the same reason, Lautenbach's subsequently-submitted affidavit, in which he asserted that the commissions agreement was customer-based, also does not create a material issue of fact. *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) ("If a party who has been examined at length

on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." (internal quotation marks and citation omitted)). Thus, as the district court held, no material issue of fact exists as to whether Chen, on behalf of De Amertek, represented that De Amertek would pay Vantage commissions on all post-termination sales to Dixie-Narco. Inasmuch as Vantage has not produced sufficient evidence that De Amertek made any representation regarding Vantage's entitlement to post-termination commissions, summary judgment was appropriate on Vantage's fraudulent inducement claim.

## C.

Finally, Vantage claims that the district court erred by granting summary judgment on its unfair and deceptive trade practices claim. Vantage's unfair and deceptive trade practices claim is premised on the alleged fraudulent representation regarding Vantage's entitlement to commissions on post-termination sales and on an alleged "nefarious scheme to deprive [Vantage] of rightfully earned commissions." (Appellant's Br. at 36); *Olivetti Corp. v. Ames Business Systems, Inc.*, 344 S.E.2d 82, 95 (N.C. Ct. App. 1986) (holding that proof of fraud necessarily establishes a violation of North Carolina's unfair and deceptive trade practices statute, N.C. Gen. Stat. § 75-1.1), *aff'd in part and rev'd in part on other grounds*, 356 S.E.2d 578 (N.C. 1987). Having concluded that summary judgment was appropriate with respect to the claims forming the basis of Vantage's unfair and deceptive trade practices claim, we have no difficulty concluding that summary judgment likewise was appropriate on the unfair and deceptive trade practices claim itself.[7]

---

[7]The parties dispute whether Illinois or North Carolina law applies to Vantage's unfair and deceptive trade practices claim, with Vantage contending that North Carolina law is applicable. We need not resolve this dispute because, even assuming North Carolina law applies, Vantage's claim fails as a matter of law.

### III.

For the foregoing reasons, the district court's grant of summary judgment in favor of De Amertek is affirmed.

*AFFIRMED*